**Paul E. RHODES, Plaintiff,**

v.

**Norval HOUSTON et al., Defendants.**

**Paul RHODES, Plaintiff,**

v.

**Clarence A. H. MEYER et al., Defendants.**

**Paul RHODES, Plaintiff,**

v.

**Richard M. VAN STEENBERG et al., Defendants.**

Civ. Nos. 01322, 01682, 01784.

United States District Court
D. Nebraska.

Sept. 8, 1966.

Paul Rhodes (or Paul E. Rhodes), Elwood, Kan., or Bridgeport, Neb., or Howe, Neb., plaintiff in all cases, appearing pro se.

Clarence A. H. Meyer, Atty. Gen. of Nebraska, Robert A. Nelson, Sp. Asst. Atty. Gen. of Nebraska, John R. Baylor,

Baylor, Evnen, Baylor & Urbom, Lincoln, Neb., and James M. Murphy, Omaha, Neb., appearing severally for sundry defendants.

Clarence A. H. Meyer, Robert A. Nelson, J. Arthur Curtiss, and H. B. Evnen, Lincoln, Neb., and James L. Macken, Bridgeport, Neb., appearing severally pro se, as parties defendant in one or more of the identified cases.

## MEMORANDUM

VAN PELT, District Judge, and DELEHANT, Senior District Judge, joining in all rulings now announced.

The plaintiff's correct post-office address, place of residence and citizenship (with respect to the state thereof) are uncertain. At all times when the cases numbered 01322, 01682 and 01784 were severally instituted he resided in Nebraska, and either at Howe, or at Bridgeport, therein, and was a citizen of Nebraska. Later, he has claimed in other litigation by him instituted and conducted in this court, that he has removed to and resides in Elwood, Kansas, and thereby has been and is a citizen of Kansas. In the doubt by him thus created, the court is indicating all of his known possible places of residence, with a view to the assurance of his receipt of notice of the present ruling, upon any residentiary hypothesis.

The cases identified in the caption, supra, are three items of litigation instituted by the same plaintiff, which have heretofore been determined by this court through rulings, all of which have been formally reported, infra, and have been affirmed by the United States Court of Appeals, Eighth Circuit, infra, of whose several affirming judgments the Supreme Court of the United States has denied review through writs of certiorari sought by the plaintiff, infra. Those cases are reported under the following identifying titles:

| Case numbers in this court. | Titles and Citations |
|---|---|
| 01322 | Rhodes v. Houston, et al. (D.C.Neb.) 202 F.Supp. 624, Aff'd November 29, 1962 (8 Cir.) 309 F.2d 959, cert. den. February 18, 1963, 372 U.S. 909, 83 S.Ct. 724, 9 L.Ed.2d 719; |
| 01682 | Rhodes v. Meyer, et al. (D.C.Neb.) 225 F.Supp. 80, Aff'd August 5, 1964 (8 Cir.) 334 F.2d 709, cert. den. November 16, 1964, 379 U.S. 915, 85 S.Ct. 263, 13 L.Ed.2d 186; and, |
| 01784 | Rhodes v. Van Steenberg, et al. (D.C.Neb.) 225 F.Supp. 113, Aff'd August 5, 1964 (8 Cir.) 334 F.2d 709, cert. den. November 16, 1964, 379 U.S. 915, 85 S.Ct. 263, 13 L.Ed.2d 186. |

In its rulings, and in the entry of its judgments, in those several cases, this court acted, in case numbered 01322, by and through Judge Van Pelt, one of its judges in active status, and in each of cases severally numbered 01682 and 01784, by and through Judge Delehant, a senior district judge, by competent authority duly and regularly assigned to this judicial district for active service. Those judges have been prompted to join for this court in taking submission of, and in making determination upon, the present post judgment challenges against the judgments in the foregoing several cases. They are pursuing that course, first, because of the common historical background of all of the three cases; sec-

ondly, by reason of the vital similarity of the basic allegations in the three separate complaints of the single plaintiff, by whom all of them were instituted; and thirdly, on account of the practical identity of the plaintiff's pleadings now directly confronting this court in all of the three cases.

This court does not, at the present point, reiterate in detail its reflection of the averments of the several complaints in its cases numbered respectively 01322, 01682 and 01784. Those averments and their settings have been adequately, in fact, repetitively, disclosed and discussed in the reported memoranda announcing its rulings in the several cases, supra. Their recollection in case No. 01322 bears the approval of the Court of Appeals, Eighth Circuit, through its express adoption of this court's opinion in that case, Rhodes v. Houston (8 Cir.) 309 F.2d 959. Moreover, though with substantial selective restatement, their recollection in cases numbered 01682 and 01784, is also approved by the Appellate Court, Rhodes v. Meyer (8 Cir.) No. 17,580, and Rhodes v. Van Steenberg, (8 Cir.) No. 17,588, 334 F.2d 709. Accordingly, for an understanding of the allegations of the several original complaints, this court, without detailed repetition, now refers to its own earlier reported rulings, and those of the Court of Appeals, Eighth Circuit, vide supra.

On September 27, 1965, the plaintiff with proof of service, filed in this court in each of the three cases an essentially identical and indistinguishable MOTION TO VACATE JUDGMENT (filing 89 in Case No. 01322, filing 39 in Case No. 01682, and filing 20 in Case No. 01784). Each such motion demanded the vacation of the judgment made and given by this court in the case in which it was filed, and asked leave to amend the complaint by the addition to it of an exactly phrased and identical new paragraph. To provide a reflection of the substance and asserted grounds of the motion, and of the proposed and requested amendment of the several complaints, the following

quotation is taken from filing 20 in Case No. 01784:

"Comes now the plaintiff in the above entitled action, and moves the court, pursuant to Rule 60(b) to grant relief from the Judgment and the order of the Court herein filed on December 16, 1963 and to permit this plaintiff to amend his complaint by attaching a paragraph thereto which is hereinafter set forth. The plaintiff moves the court to vacate the judgment and permit the amendment for the reason excusible (sic) neglect, suprise (sic), misrepresentation and misconduct of adverse parties. That the judgment is void and for the further reason that said judgment is unjust and not equitable and are being used by the defendants and others as a claim of res judicate (sic) and stare decisis, when in truth and in fact the District Court of Morrill County, Nebraska in Case No. 4819, State of Nebraska vs. Rhodes had no jurisdiction of the defendant, Rhodes, on November 21, 1960 for the following reason, to-wit: This plaintiff, in said action case 4819, on November 21, 1960 filed Motion for Continuance which was denied by the Court and after the denial of said continuance no notice was given this plaintiff that his application for continuance had been denied and this plaintiff was given no opportunity to be present and defend after the denial of his motion for continuance. And immediately and forthwith after the denial of Motion for Continuance on November 21, 1960, case 4819 proceeded to trial, in the absence of this plaintiff, in absentia and continued through sentencing in the absence of this plaintiff. At that time and immediately after the denial of the Motion for Continuance the Court in said case 4819 lost jurisdiction of the person of this plaintiff, and Judge Van Steenberg was without jurisdiction of this plaintiff at the time he received additional evidence on the merits of the contempt on November 21, 1960

and sentenced this plaintiff. The Judgment in case 4819 of November 21, 1960 is void for want of jurisdiction of the person of this plaintiff, and for said reason the Judgment of this Court filed December 16, 1963 should be set aside and vacated. That the plaintiff be allowed to attach the following paragraph to his complaint, to-wit:

"That on November 21, 1960 in the absence of this plaintiff in case 4819, State of Nebraska vs. Rhodes, District Court of Morrill County, Nebraska this plaintiff caused Motion for Continuance to be filed in his absence. That this plaintiff was not present in Court on said day and was not represented by Counsel, and was not under bail or bond, and further was not within Jurisdiction of the Court on said day. That on November 21, 1960 the Court denied this plaintiff's Motion for Continuance. The Court nor none of its officers on November 21, 1960 gave this plaintiff any notice that his Motion for Continuance had been denied; that this plaintiff, the accused was not given due notice of his denial of Motion for Continuance on November 21, 1960. The accused was given no opportunity to be present and defend on November 21, 1960 after his motion for continuance had been denied. The Court forthwith, without notice to this plaintiff, the accused, proceeded to trial on the merits in said case 4819 immediately after the denial of the motion for continuance; in the absence of this plaintiff, the accused, and at a time he was not present in court and not represented by counsel. The accused was not present, was not faced by his accusers or witnesses, the court rendered judgment and passed sentence in the absence of the accused. Oral Argument is requested on this Motion."

It may be understood that the motion thus filed in each of the other two cases was and is indistinguishable, *mutatis mutandis*, from the one just cited in respect of all of its material language thus quoted.[1]

Concerning the request for oral argument, supra, it is here noted that oral argument in open court, in Lincoln, Nebraska, on October 19, 1965 at 9:00 o'clock A.M., pursuant to due notice, was presented upon the motion theretofore filed in the three several cases, and each of them.

But on November 2, 1965, in each of the three cases, the plaintiff also filed a pleading essentially identical in all of these cases, entitled "SUPPLEMENT TO MOTION TO VACATE JUDGMENT," which appears as filing 94 in case No. 01322, as filing 44 in case No. 01682, and as filing 25 in case No. 01784. Without detailed copying of that "supplement to motion to vacate judgment" in the three cases, it is now stated that with only minor verbal variations designed to adapt it to the several cases, it charged that, in each such case, the judgment of dismissal was null and void,

a) because this court in arriving at its ruling in each such case had resort to the original records of the District Court of Nebraska, especially of Morrill County therein, and of the Supreme Court of Nebraska (observe from the reported and now cited opinions of this court in the three several cases, the extent to which such use was made)

---

1. Actually, the only differences, as between the three cases, in the last quoted language, supra, are these:
(a) in Rhodes v. Houston et al, No. 01322, the second sentence of the body of the motion does not contain the words "excusible (sic), neglect, suprise (sic), misrepresentation and misconduct of adverse parties;" and,

(b) appropriate designation is made of the date of the filing of this court's judgment in each case. Thus, the date of filing of this court's judgment (instead of December 16, 1963, case No. 01784) is January 29, 1962 in No. 01322, and December 3, 1963 in No. 01682.

and thereby denied the plaintiff his rights under the Fifth Amendment of the Constitution of the United States, and his right to trial by jury; and

b) because, as plaintiff contends and argues, this court is bound by what the plaintiff chooses to characterize as "Rhodes v. Edmondson, case No. 02555 (sic. See correct identification of that number, infra) in the United States District Court of Nebraska," wherein he gratuitously asserts that "this court allowed punitive damages in the sum of $225,000.00 as a warning to all others against a similar lapse of conduct." (See, shortly hereafter, the utter absence of basis for that position).

And, finally, on December 21, 1965, the plaintiff filed, as filing 95 in case No. 01322, as filing 46 in case No. 01682, and as filing 26 in case No. 01784, a SECOND SUPPLEMENT TO MOTION TO VACATE JUDGMENT ON THE MERITS, on the ground that the trial court's judgment on the merits in each of these actions is void for want of jurisdiction over the subject matter of the suits; and that such lack of jurisdiction arises because of the want in each case of diversity of citizenship, and the plaintiff's thus tardy assertion that his theretofore maintained claim of jurisdiction, as of an action arising under the Civil Rights Act was and is invalid.

Again, this court, recognizing plaintiff's demand for oral argument, tendered with the prime motion in each of the three cases, entered an order for oral argument on January 31, 1966 at 9:30 o'clock A.M., at Lincoln, Nebraska, upon the SUPPLEMENT TO MOTION and the SECOND SUPPLEMENT TO MOTION. And such oral argument was then and there held. And briefs supplementing the arguments have been received.

The plaintiff's several motions, and supplements to motions, thus identified are therefore ready for ruling.

However, before proceeding to its decision upon the pending motions, supra, which are before it, this court is persuaded that it should take notice, and make mention, of a further step which was pursued by the plaintiff after his filing of the several supplements and second supplements to his prime motions, but before the arguments which were held, supra, on January 31, 1966. That step is next mentioned.

At some date, of which this court is not aware, but before January 10, 1966, the plaintiff properly designating himself as "the appellant,"[2] prepared and signed a single motion or petition, with a supporting memorandum, addressed and transmitted to the United States Court of Appeals, Eighth Circuit, wherein, identifying all three of these cases by their several titles and numbers on appeal, supra, he prayed for relief in each of the three cases, which relief is thus reflected in the caption of that pleading:

"MOTION OR PETITION TO VACATE VOID JUDGMENTS ON THE MERITS IN EACH OF THE AFORESAID ACTIONS FOR THE REASON THE COURT WAS IN EACH ACTION LACKING AND WITHOUT JURISDICTION OF THE SUBJECT MATTER AND POSSESSED NO JURISDICTION TO DECIDE SAID CASES OR ANY OF THEM ON THE MERITS, OR IN THE ALTERNATIVE A PETITION FOR RE–HEARING AND TO VACATE THE JUDGMENT ON THE MERITS BECAUSE THE COURT DID NOT HAVE JURISDICTION OF THE SUBJECT MATTER NECESSARY TO DECIDE THE CASES ON THE MERITS: AND FURTHER MOTION TO VACATE THE JUDGMENTS ON THE MERITS IN EACH OF SAID ACTION AND DIRECT THE DISTRICT COURT TO VACATE THE

---

**2.** For in each of the three cases in the Court of Appeals, Eighth Circuit, he was the "appellant."

JUDGMENT ON THE MERITS AND DISMISS THE ACTION FOR THE REASON THE COURT DID NOT HAVE JURISDICTION OF THE SUBJECT MATTER."

Actually, the plaintiff, as appellant, twice in that motion, addressed to the Court of Appeals, and with an observable variation, stated his motion's prayer. By the second of those statements he substantially repeated and made the demand just reflected in capital letters in the caption of such pleading. But his earlier statement therein of his pursued relief was couched in this language:

"Comes now the appellant in each of the foregoing actions and moves and petition (sic) the court to vacate the judgments entered on the merits in each of the above named cases and to direct the District Court to do likewise *or grant the district court permission to vacate the judgments on the merits, and dismiss the actions* for the reason the court does not have jurisdiction of the subject matter in each of the said action (sic) and has no jurisdiction to render judgments on the merits in each of the aforesaid actions and the judgments in each of the aforesaid actions on the merits are void for the reason the court did not have jurisdiction of the subject matter in any of said actions." (Emphasis added, see infra)

On January 10, 1966, the Court of Appeals, Eighth Circuit, duly considered the pleading so placed before it, in its asserted pertinence to each of the three affected cases; and in each of the cases directed the clerk of that court to file the motion and memorandum, and ordered "that the motion be, and it is hereby, denied in all respects." A copy (omitting caption) of the entry then separately made by the Court of Appeals in each of the three cases follows:

"The court has considered a document entitled Motion or Petition to Vacate Void Judgments on the Merits in Each of the aforesaid actions for the reason the court was in each case lacking and without jurisdiction of the subject matter, and possessed no jurisdiction to decide said cases, or any of them, on the merits, or in the alternative a Petition for Rehearing and to Vacate Judgments on the merits because the court did not have jurisdiction of the subject matter necessary to decide the cases on the merits; and further Motion to Vacate the Judgments on the merits in each of said action (sic) and direct the district court to vacate the judgment on the merits and dismiss the action (sic) for the reason the court did not have jurisdiction of the subject matter, and supporting memorandum tendered by Appellant Paul E. Rhodes.

"The clerk is directed to file the Motion and Memorandum, and it is now here ordered that the Motion be, and it is hereby, denied in all respects."

Subsequent to the entry by the Court of Appeals in each of the three cases of the order last quoted, the plaintiff herein filed in the Supreme Court of the United States a petition for a writ of certiorari to review the action of the Court of Appeals, Eighth Circuit, reflected in that order. On March 7, 1966, the Supreme Court of the United States made and entered its order denying the writ thus sought in cases numbered 01682 and 01784, by the plaintiff herein. (See 383 U.S. 939, 86 S.Ct. 1073, 15 L.Ed.2d 856) and on April 4, 1966, the Supreme Court of the United States made and entered an order denying the writ thus sought in case No. 01322 by the plaintiff herein. (See 383 U.S. 971, 86 S.Ct. 1282, 16 L.Ed.2d 311.)

From the files of this court in the several actions presently under examination, it is made clearly to appear that plaintiff's motions to vacate the orders and judgments in such actions, so filed in each of those actions on September 27, 1965, were filed,

1) in *case No. 01322*, three years, seven months, twenty-eight days after the entry by this court on January 29, 1962 of the order and judgment against which the motion was directed, two years, nine

months, twenty-eight days after the affirmance by the United States Court of Appeals, Eighth Circuit, on November 29, 1962, of that order and judgment, and two years, seven months, nine days after the denial on February 18, 1963 by the Supreme Court of the United States of a writ of certiorari in that case;

2) in *case No. 01682,* one year, nine months, twenty-four days after the entry by this court on December 3, 1963 of the order and judgment against which the motion was directed, one year, one month, twenty-two days after the affirmance by the United States Court of Appeals, Eighth Circuit, on August 5, 1964 of that order and judgment, and ten months, eleven days after the denial on November 16, 1964 by the Supreme Court of the United States of a writ of certiorari in that case; and,

3) in *case No. 01784,* one year, nine months, eleven days after the entry by this court on December 16, 1963 of the order and judgment against which the motion was directed, one year, one month, twenty-two days after the affirmance by the United States Court of Appeals, Eighth Circuit, on August 5, 1964 of that order and judgment, and ten months, eleven days after the denial on November 16, 1964 by the Supreme Court of the United States of a writ of certiorari in that case.

And as a matter of simple computation, plaintiff's several "supplements to motion to vacate judgments," and "second supplements to motions" were severally filed, the former, one month, five days, the latter two months, twenty-four days, still later than the several prime "Motions to Vacate," supra.

This court has accorded respectful and careful attention to each and all of the several post-judgment pleadings by the plaintiff so filed in the three several cases, and now under consideration, in the light of the records and history of these cases. It has had due regard to the oral arguments and briefs presented by the plaintiff in support of those pleadings, and by the defendants in opposition to them.

The plaintiff expressly professes to, and does, tender his motions to vacate the judgments in the several actions under Rule 60(b), Federal Rules of Civil Procedure. The complete text of that rule follows:

"RULE 60. RELIEF FROM JUDGMENT OR ORDER:

\* \* \* \* \* \*

(b) MISTAKES; INADVERTENCE; EXCUSABLE NEGLECT; NEWLY DISCOVERED EVIDENCE; FRAUD, etc.

On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to grant relief to a

defendant not actually personally notified as provided in Title 28, U.S.C., § 1655, or to set aside a judgment for fraud upon the court. Writs of coram nobis, coram vobis, audita querela, and bills of review and bills in the nature of a bill of review, are abolished, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action."

■ It is uniformly recognized that resort by an unsuccessful litigant may not be had to Rule 60(b), generally, (see Volume 7, page 215, Moore's Federal Practice, Second Edition, and cases cited), or to any of its several subdivisions just quoted, (see Volume 7, page 297, Moore's Federal Practice, Second Edition, and cases cited), as a substitute for, or to serve the mission of, appeal. The citation of reported opinions to that effect would serve no present purpose, for no contention to the contrary appears presently to be advanced. See representatively, however, Hartman v. Lauchli, (8 Cir.) 304 F.2d 431, 432,[3] and cases supportively cited therein; and Ackermann v. United States, 340 U.S. 193, 71 S.Ct. 209, 95 L.Ed. 207.

■ The court first confronts the important issue of the untimeliness of the tender in these cases of the plaintiff's Motion to Vacate Judgment which, with the minor verbal variation already noted, is common to all of them. It was filed in each of the cases on September 27, 1965, supra. That, therefore, is the presently critical date, for it was by such filing that the motion was "made" within the defining language of the rule, et supra et infra.

This observation appears to this court to be appropriate as a reflection preliminary to the consideration of the limitations of time set out in Rule 60(b). That rule is one of those of the Federal Rules of Civil Procedure *which are explicitly excepted from the liberal allowance to the trial court by Rule 6(b), of the authority to enlarge the time for the taking of actions contemplated by the rules.* By Rule 6(b), after the general grant of the discretionary judicial power of enlargement of time, it is precautionarily declared, *respecting the court:*

> "but it may not extend the time for taking any action under rules 50(b), 52(b), 59(b), (d) and (e), 60(b), and 73(a) and (g), *except to the extent and under the conditions stated in them.*" (Emphasis added)

present attention has, therefore, to be accorded to Rule 60(b) itself, as the measure of timeliness.

■ It must be kept in view that, by the plain language of Rule 60(b), supra, relief under it against a judgment may be obtained, if at all, only for one or more of the following "reasons" which are numbered and identified in the rule:

*Identified Reason or Reasons*

*Number*

"1) mistake, inadvertence, surprise, or excusable neglect;

2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);

3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party;

4) the judgment is void;

5) the judgment has been satisfied, released, or discharged, * * * or it is no longer equitable that the judgment should have prospective application; or

6) any other reason justifying relief from the operation of the judgment."

---

3. Wherein, the court (Sanborn, J.) declared:

"Rule 60(b) was not intended as a substitute for a direct appeal from an erroneous judgment. *The fact that a judgment is erroneous does not constitute a ground for relief under that Rule.*" (Emphasis added)

That specification of "reasons" is succeeded immediately in the rule by the following emphatic prescription:

"The motion shall be made within a reasonable time and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken."

The rule, therefore, imposes a twofold time limitation upon resort under it to any one or more of its reasons numbered (1), (2), and (3). Those limitations are, first, that the motion on those three grounds, or any one or more of them, must be "made within a reasonable time" and, secondly, that it must be made, in any event, "not more than one year after the judgment, order, or proceeding was entered or taken." And that restriction has consistently been held to bar the allowance of relief for any one or more of those three reasons, either if the motion for such relief be filed more than one year after the entry of the order or judgment by it assailed, or if it be filed at any time after such entry which, in the circumstances of the case, is not reasonable, even though that interval be less than one year. Moore's Federal Practice, Second Edition, pp. 238 as to reason (1), 242 as to reason (2), and 247 as to reason (3), and its author's pertinent textual discussion; Ledwith v. Storkan (D.C.Neb.) 2 F.R.D. 539;[4] Woods v. Severson (D.C.Neb.) 9 F.R.D. 84; Vaughan v. Petroleum Conversion Corporation (D.C.Conn.) 120 F.Supp. 175, 178; United States of America v. 140.80 acres of Land more or less (D.C. La.) 32 F.R.D. 11, 14; Tobriner v. Chefer, 118 U.S.App.D.C. 246, 335 F.2d 281, 282, 283; Schildhaus v. Moe (2 Cir.) 335 F.2d 529, 531; Mayfair Extension, Inc. v. Magee, 100 U.S.App.D.C. 48, 241 F.2d 453, 454; Radack v. Norwegian American Line Agency, Inc. (2 Cir.) 318 F.2d 538, 541.

▇ And to obtain relief under Rule 60(b) for any of the "reasons" specified

in the rule, supra, except reasons (1), (2), and (3), the motion for such relief must "be made within a reasonable time." In that relation, whether a period of time, after the entry or taking of a judgment or order, which elapses before the making of the motion for relief against the judgment or order is, or is not, reasonable is to be determined by all of the circumstances of the particular case.

Within the language of "reason" (1) of Rule 60(b), supra, the present plaintiff may, by a liberal understanding of his Motion to Vacate and its supplementations, be considered to have attempted to rest his currently pending Motion to Vacate, as supplemented, in part on the grounds of "surprise and excusable neglect," and, though doubtfully, infra, of "mistake" and "inadvertence." It is true that in his "Motion to Vacate," as filed in case No. 01322, he does not, *in ipsis verbis*, attribute his plight to "excusable neglect" or "surprise" in like manner as he attributes it in each of the other two cases. It is also true that in none of the three cases does he explicitly assign either "mistake" or "inadvertence" as a ground for the motion. But in his oral argument, especially on October 19, 1965, he signified that he made the same contentions in respect of grounds for relief, in case No. 01322, as he did in cases numbered 01682 and 01784. The court has, therefore, approached its ruling with the probably too liberal thought that he undertook to rest upon "surprise" and "excusable neglect" equally in all three of the cases. Moreover, that same argument was as nearly oriented to "mistake" or "inadvertence" as to "surprise" or "excusable neglect," although it actually failed adequately to support by factual specification, any of those identified grounds for relief. The court has, therefore, regarded the "Motion to Vacate" as if, in general terms, it had asserted the presence of mistake, inadvertence,

4. Cited in full recognition of its relation to Rule 60(b) as it was effective in 1942, but in the persuasion that, apart from the later increase to one year instead of the then prescribed six months, as the maximum allowable interval, the discussion of the cited case is presently relevant.

surprise and excusable neglect, within the contemplation of "Reason" (1), and that, despite the inexact and unparticularized assignments just mentioned.

A careful and tolerant reading of the "Motion to Vacate," as supplemented, has led the court to the conclusion both that the plaintiff does not claim the existence of "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);" and that, if he may be considered to make any such claim, he fails both to identify such evidence, and by specification to support the very important aspect of its undiscoverability in time to move for a new trial. "Reason" (2) is, therefore, regarded as not before the court.

It is true that, although without adequate, or any real, factual specification, the plaintiff, in each of the three cases, asserts the existence of "misrepresentation and misconduct of adverse parties." Hence, reserving the problem of the adequacy of its assertion, the court deals with the question of the timeliness of the pending motions with supplementations, in so far as "Reason" (3) extends.

▇ Respecting "Reasons" (1), (2), though (supra) it is not regarded as tendered, and (3) of Rule 60(b), and each of them, the court holds that neither the prime "Motion to Vacate" nor either of its supplementations, was tendered timely under Rule 60(b), and that, because of such untimeliness, the plaintiff's several demands for relief on those grounds, or either or any of them, from the several judgments must be denied. Such a demand is barred by the lapse of the rule's maximum period of one year after the entry of each of the judgments. Besides, as will presently be disclosed, the court also considers that, wholly apart from that prescription of a strictly measured time limit, the filing of the "Motion to Vacate" did not occur "within a reasonable time" after the entry of any of the three judgments.

Proceeding further through Rule 60 (b), the court is of the opinion that the plaintiff, by his Motion to Vacate in each of the three cases, charges that the judgment in each of those cases is void. Dealing, yet, only with the factor of timeliness of the Motion to Vacate, as supplemented, the court reserves until later herein the question of the adequacy of the charge that its several judgments are actually void.

"Reason" (5) under Rule 60(b) seems not effectively, or at all, to be resorted to. None of the three judgments involved "has been satisfied, released or discharged." The first of the three clauses of "Reason" (5) is, therefore, simply inapplicable. The second clause of "Reason" (5) is equally inapplicable, because none of the three attacked judgments is "based on a prior judgment which has been reversed or otherwise vacated." Inapplicable, too, is the third clause of "Reason" (5) which has chiefly to do with decrees possessing continuing controllingly operative consequence rather than judgments finally, and without persisting jurisdiction, terminating litigation. And the plaintiff himself has not directed his or the court's attention to that aspect of the rule.

▇ "Reason" (6), pertaining to "any other reason justifying relief from the operation of the judgment," is asserted also in generality by the plaintiff in each case. However, let it be understood that "Reason" (6) may not be invoked on any ground within the definition of any of "Reasons" (1), (2), (3), (4), or (5).

The court, therefore, considers that plaintiff has undertaken to seek the vacation of the judgments in the three several cases, both as void, under Reason (4) of Rule 60(b), and "[for] any other reason justifying relief from the operation of the judgment," under "Reason" (6) of Rule 60(b), as thus limited in its reach in the concluding sentence of the last preceding paragraph hereof. But, having regard, still, to the issue of the timeliness of his present recourse, the court is convinced that none of his motions to vacate, as modified, in the several cases, was made "within a reason-

able time" under any rational evaluation of that requirement of the cited Rule. Tobriner v. Chefer, 118 U.S.App.D.C. 246, 335 F.2d 281, 282, 283.

■ Briefly recalling again the varying intervals between the entry, or taking, of the several assailed judgments in the three cases involved, on the one hand, and on the other hand, the filing of the several motions to vacate the respective judgments, these intervals were three years, seven months, twenty-eight days in case No. 01322; one year, nine months, twenty-four days in case No. 01682; and one year, nine months, eleven days in case No. 01784. More than that, the interval was long enough in each case for the plaintiff's unsuccessful prosecution in each of those three cases of an appeal to the United States Court of Appeals, Eighth Circuit, and the pursuit thereafter of his equally fruitless effort to obtain review by the Supreme Court of the United States under a writ of certiorari, in respect of each such case. For, after the denial of a writ of certiorari, and before the filing of the Motion to Vacate, there was a lapse of two years, seven months, nine days in case No. 01322, and ten months, eleven days in each of cases numbered 01682 and 01784. That is simply intolerably long in each case. And, viewed otherwise, it demonstrates the plaintiff's disdain of any remedy he may have thought himself to possess under Rule 60(b) so long as, and, indeed, until long after, he might—and did—remain in the direct appellate channel of adjudication. And that observation is not made in a spirit of criticism, for it was within that channel that his several cases belonged in his quest of relief on any ground he now asserts.

It is to be kept in view, also, that, if and to the extent that any position upon which the plaintiff now relies may have any virtue, it was continuously known by him, and available to him, from and after the entry of the judgment now assailed in each of the three cases. His course in the several cases closely approaches, in fact, actually constitutes, trifling with this court, and that through indefensibly long separate intervals of time in the several cases.

This court regards the plaintiff's submission of his Motions to Vacate in the several cases, and his supplementations thereof, as recognizing the necessity that, insofar as he relies for the relief thereby sought on Reasons (1) and (3) and (6), or any of them, such motion must be made within a reasonable time, and for Reasons (1) and (3), or either of them, not longer than one year, after the entry of the judgment in each of the several cases. Both of those limiting provisions stand athwart his demands for relief, alike for "Reason" (1) and for "Reason" (3); and the limitation of "a reasonable time" bars his quest of relief for Reason (6).[5]

In his submission, to the extent that it is based on "Reason" (4), that is to say, upon the contention that the judgments are void, plaintiff appears to argue that if it be granted, or determined, that a particular judgment is void, then, it may be treated, without more, as a nullity and vacated, quite irrespective of the rule's prescription touching the time of the tender of that issue under Rule 60 (b). However, because, as will presently appear, the plaintiff's specifications of the distinct and separate grounds of utter invalidity (*vide infra*) in the several judgments are without virtue, this court is convinced that none of the three judgments of this court is void. And it considers that the requirement of Rule 60(b), on the score of the time for the making in each case of a motion to vacate, is operative as to each of such judgments. And the motion, on that ground as here asserted, to vacate in each case is, therefore, vulnerable to denial on the ground of its untimely filing. It was not filed in any of the three cases "within a reasonable time"

---

5. Here it is repetitively observed that each of "Reasons" (2) and (5) may be disregarded. Neither is presently invoked by the plaintiff.

after the order or judgment assailed in any of the cases was entered or taken. Rule 60(b)

Plaintiff's demands for vacation of the judgment in each of the three cases on the ground that the several judgments are void are presented in different pleadings, and rest on a variety of asserted bases. Thus, in his "Second Supplement to Motion to Vacate" filed on December 21, 1965, he demanded such vacation on the ground of the alleged absence in each, or any, of the cases, of jurisdiction of the subject matter of the action, supra. And he professes to find that want of jurisdiction in the asserted objective invalidity then by him first advanced of his own averment in the inception, and throughout the course theretofore of each of the cases, that this court's jurisdiction over the litigation arose out of the violation by the defendants of his civil rights within the protective guaranty of the constitution and laws of the United States. In that *volteface,* he insists that the trial court, in response to the motions to dismiss served and filed by his adversaries, should simply and solely have dismissed his several complaints for want of jurisdiction of the subject matter thereof.

■ This court readily recognizes that its jurisdiction over the subject matter of a case must validly exist, and may not come into being by stipulation or agreement of the parties, or even through estoppel in the ordinary sense. It recognizes, too, that, in his complaint in each of the three cases now before it, the plaintiff explicitly asserted, and vigorously contended for, subject matter jurisdiction under the nineteenth century Civil Rights legislation, and that in their pleadings before the court, the defendants, by motions to dismiss, resisted that position and sought dismissal because of its asserted invalidity.

Civil No. 01322, the suit against Houston and others, was filed on September 21, 1961. It ran its course, as already set out herein, through dismissal by this court, affirmance by the Court of Appeals, and denial of certiorari, the last step of which occurred on February 18, 1963, supra. In that case, the plaintiff in his complaint alleged that, in addition to other presently immaterial jurisdictional prescriptions, this court possessed jurisdiction of the action under Title 28 U.S.C., section 1343, and Title 42 U.S.C., sections 1983 and 1986, and (without particularization) the fourteenth, fourth, fifth, sixth, eighth and thirteenth amendments of the constitution of the United States, and Article I, section 9 of such Constitution. He undertook thereby to invoke the jurisdiction of this court upon the basis of violations of his constitutionally guaranteed civil rights. Service and filing were made of some fifteen separate motions to dismiss the complaint (filings 18 to 32). Each of such motions was tendered in behalf of one or more, and, together, they were tendered in behalf of all, of the defendants. In each of those motions, the dismissal of the complaint was demanded on sundry grounds, including (a) the failure of the complaint to state a claim within the protection of the Federal Civil Rights Act, or any other statutory or constitutional provisions, upon which the plaintiff sought to predicate his action, and (b) the failure of the complaint to state a claim upon which relief could be granted against any such defendant making, or joining in, such motion. Among other questions which the several motions presented against the complaint and in quest of its dismissal, all of the motions then tendered the two grounds last mentioned.[6] Assigned also in the motions to dismiss, as a significant factor supporting the ground of failure of the plaintiff's pleading to state a claim on which relief could be granted, was the moving parties' contention of their protection under the doctrine of judicial or quasijudicial immunity to suit, such as that brought by the plaintiff.'

This court, Judge Van Pelt presiding, took submission in case No. 01322 of

---

6. The other grounds varied from case to case and motion to motion.

the several motions to dismiss, and on January 29, 1962, made and entered in the case an order, (a) granting and sustaining each and all of the motions, (b) dismissing the plaintiff's complaint, and (c) quashing sundry subpoenas issued in anticipation of a then contemplated hearing in the case, rendered purposeless by its dismissal. And Judge Van Pelt filed, on January 31, 1962, a memorandum opinion announcing the ruling, and declaring the grounds for its entry. Rhodes v. Houston (D.C. Neb.), 202 F.Supp. 624, supra.

The memorandum opinion in the Houston case just adverted to opens with the following paragraph:

*"This is an action based upon the federal Civil Rights Act*[7] *brought by Paul E. Rhodes as plaintiff against a number of Nebraska judicial and law enforcement officers, a North Platte, Nebraska law firm and the bonding companies of a number of the defendants."* (Emphasis added)

And, though without formal analysis and discussion or judicial argument, this court, by way of decision, thereby accepted the plaintiff's own classification, within the jurisdictional reach of the Civil Rights Act of the nineteenth century, of case No. 01322. And it proceeded forthwith to the consideration of, and the sustaining ruling upon, the then pending motions to dismiss on the other grounds assigned therein, but chiefly, for the complaint's failure to state a claim on which relief could be granted, Rule 12(b)(6), Federal Rules of Civil Procedure, and on the ground of judicial or quasijudicial immunity of the several moving individual defendants to such a suit. Thus, by necessary implication, as well as by the defining paragraph of the opinion last above quoted, this court affirmed its jurisdiction of the action

under the earlier Civil Rights Act. Logically, too, an affirmative adjudication of the existence of jurisdiction underlies, and is involved and implied, in the dismissal of a complaint on the score of its vulnerability to Rule 12(b)(6), supra, or on the interrelated ground of the individual defendants' immunity to a suit of the character involved, or on both of such grounds.

As has already been observed, the ruling just considered was by the Court of Appeals, Eighth Circuit, affirmed on the basis of Judge Van Pelt's memorandum, and without further opinion, supra.

On December 3, 1963, thus nearly two years after the entry of the dispositive order or judgment of this court in Rhodes v. Houston, supra,[8] this court, Judge Delehant presiding, filed its memorandum opinion, and its order and judgment (filings 32 and 33) granting and sustaining the several motions of the defendants to dismiss the plaintiff's Amended Complaint in case No. 01682, Rhodes v. Meyer, and dismissing such Amended Complaint.[9] And six days after that ruling in Rhodes v. Meyer, supra, this court, Judge Delehant again presiding, filed its memorandum opinion and its order and judgment (filings 14 and 15) making like ruling in case No. 01784, Rhodes v. Van Steenberg.[10] It is here recalled that at the times of the several rulings of this court in cases numbered 01682 (Meyer) and 01784 (Van Steenberg), this court's ruling in case No. 01322 (Houston), not only had been delivered for almost two years, but had also been affirmed on Judge Van Pelt's opinion for more than a year; and that the denial of certiorari in it had occurred more than nine months before the *Meyer* and *Van Steenberg* cases were decided in this court, supra. It was in the face of that history that

---

7. It need not be observed that the references herein to any "Civil Rights Act" are not in any wise related to similarly characterized national legislation of the presently current decade.

8. In fact, one year, two months, four days; And it may be added, one year, four days,

after the affirmance of that ruling by the Court of Appeals, and eleven months, fifteen days after the denial of certiorari to review that affirmance, supra.

9. For opinion, see D.C., 225 F.Supp. 80.

10. For opinion, see D.C., 225 F.Supp. 113.

this court ruled in cases numbered 01682 and 01784, and each of them.

As in case No. 01322, so in each of cases numbered 01682 and 01784, the several motions to dismiss the plaintiff's amended complaint challenged this court's jurisdiction of subject matter under the Federal Civil Rights Act, and pleaded the immunity to such suit of each moving individual defendant. In respectful recognition of the foregoing then recent history of case No. 01322, this court, in each of cases numbered 01682 and 01784, followed the course pursued in case No. 01322, and sustained the pending motions to dismiss for failure to state a claim on which relief could be granted, Rule 12(b)(6), and by reason of the immunity to such a suit with which the law protects each moving individual defendant. Thereby, although the court in its memoranda in cases numbered 01682 and 01784, signified its doubt touching the jurisdictional applicability of the federal Civil Rights Act, it judicially accepted the plaintiff's affirmative position upon that jurisdictional question in each of the two later cases, and proceeded therein to decision on the basis of the fatal inadequacy of the amended complaint's statement of a claim to support the allowance to him of any relief, and of the immunity to suit possessed by the individual defendants. Upon the jurisdictional issue, the court made essentially indistinguishable comments in both of the later two opinions. That comment in case No. 01682 (225 F.Supp. 80 at page 96), is in this language:

"Each motion to dismiss asserts as one of its supporting grounds that the plaintiff's claim asserted in the amended complaint is not within the protection of the Federal Civil Rights Act, or any other statutory or constitutional protection upon which plaintiff seeks to predicate his action. From the files in Case No. 01322, Rhodes v. Houston, supra, it appears that each motion to dismiss in that action also made a like assertion, and thereby challenged the court's jurisdiction. In the case last mentioned, Judge Van Pelt appears not to have made explicit determination upon the question thus presented, but rather to have passed upon the motions before him upon the questions of the adequacy of the complaint to state a claim supporting relief, and the related immunity to suit of the defendants. Confronted with a like situation, the court is presently pursuing a similar course. But it must not be understood as rejecting the jurisdictional position of the moving defendants, or as minimizing its vital significance. It is an important, and probably a vital, issue whose determination against the plaintiff would obviate the necessity of presently meeting any other problems now presented. And the writer of this memorandum acknowledges grave doubt whether, even on paper, the plaintiff has brought himself under the jurisdictional coverage of the Civil Rights Act, whether that Act ever has been or, even with its current liberal application, is, operative to confer jurisdiction on this court to determine, as between citizens of Nebraska, controversies that arise out of what is essentially a suit for damages on account of false imprisonment or malicious prosecution, or both."

The like, though not verbally identical comment, in case No. 01784[11] need not be repeated.

---

11. It will be observed that in the immediately foregoing quotation from Case No. 01682, essentially repeated in Case No. 01784, the court did not assert that in Case No. 01322, Judge Van Pelt did not *determine* the jurisdictional coverage of that suit by the Federal Civil Rights Act. It rather signified the view that he did not *explicitly* determine that question,

that is to say, that he did not comprehensively discuss and analyze it in the course of his decision. It is obvious, supra, that in the paragraph quoted above from Judge Van Pelt's ruling in Case No. 01322, he did assert the controlling jurisdictional basis of the Federal Civil Rights Act, and that a recognition of such asserted coverage is also implicit in his

The court, therefore, upon the present submission, considers that, in its earlier determination of each of the three cases, and through both of the presently acting judges, it judicially accepted the plaintiff's claim of jurisdiction of subject matter under the Federal Civil Rights Act. Such acceptance is inevitably involved in the ruling made by this court upon the motions in each of the cases.

But the plaintiff, in his present motions in the several cases, now, and despite his own declaration, in each of his complaints, of this court's jurisdiction over the subject matter in each of the three cases, contends that such jurisdiction did not actually exist in any such case, and that this court's acceptance of jurisdiction and its ensuing judgment in each of the cases is utterly void. That position, in the context of this litigation is unsupportable.

Without purposeless repetition, it is recalled that in each of the three cases at which the instant motions to vacate are directed, the plaintiff in his complaint positively alleged this court's jurisdiction of the subject matter of the suit under the Civil Rights Act of the nineteenth century, and that, by motion, each defendant denied and challenged the existence of such jurisdiction. In each of the cases, this court accepted the plaintiff's claim of that jurisdictional base.[12] Moreover, it proceeded forthwith in each of the three cases to the exercise of that jurisdiction, and made a ruling and entered a judgment which rested inevitably upon the existence of such jurisdiction. Upon appeal, each of those judgments was affirmed, and certiorari to review that affirmance was denied, supra.

Confronted by the complaint in each of the cases, and the several motions tendering the issue of the court's jurisdiction of the litigation's subject matter, this court possessed without question the jurisdiction and authority, in fact, had the duty, Rule 12(d), Federal Rules of Civil Procedure, to determine upon its own jurisdiction. In each of the three cases, it accepted such jurisdiction, thus holding for the plaintiff upon that issue. That course constituted a judgment of the court, a ruling which, by definition, underlay the further action of the court sustaining the motions to dismiss, and adjudging the dismissal of, each complaint. That judgment accepting jurisdiction was not void. It was, indeed, subject to reversal on appeal, if it had been adjudged, in the appellate process to have been erroneous. But, upon its affirmance on appeal, and the coming down of the Mandate, it became *res judicata* on the issue of jurisdiction over subject matter. Stoll v. Gottlieb, 305 U.S. 165, 171 to 177, 59 S.Ct. 134, 83 L.Ed. 104; Baldwin v. Iowa State Traveling Men's Association, 283 U.S. 522, 51 S.Ct. 517, 75 L.Ed. 1244; American Surety Company v. Baldwin, 287 U.S. 156, 166, 167, 53 S.Ct. 98, 77 L.Ed. 231; Des Moines Navigation and Railroad Company v. Iowa Homestead Company, 123 U.S. 552, 558, 559, 8 S.Ct. 217, 220, 31 L.Ed. 202, in which the court, *inter alia,* said:

"In the suit now under consideration there was a separate and distinct controversy between the plaintiff, a citizen of Iowa, and each of the citizens of New York, who were defendants. Each controversy related to the several tracts of land claimed by each defendant individually, and not as joint owner with the other defendants. Three

---

entire ruling. And in his rulings in Cases numbered 01682 and 01784, Judge Delehant, though signifying and supportively discussing his own personal doubt on the jurisdictional question, nevertheless, followed Judge Van Pelt's earlier—and appellately affirmed—view, and, himself proceeded to decision in the same course that

had theretofore been taken in Case No. 01322 by a judge of this court, and been fortified by affirmance on appeal, of which review had been denied.

12. Albeit, with acknowledged doubt in cases numbered 01682 and 01784, on the part of Judge Delehant, who, alone, acted in them.

of the citizens of New York caused to be made and filed the necessary affidavit and petition for removal, and thereupon, by common consent apparently, the suit as an entirety was transferred to the Circuit Court for final adjudication as to all the parties. The plaintiff, as well as the defendants, appeared in the Circuit Court without objection, and that court proceeded as if its authority in the matter was complete. Whether in such a case the suit could be removed was a question for the Circuit Court to decide when it was called on to take jurisdiction. If it kept the case when it ought to have been remanded, or if it proceeded to adjudicate upon matters in dispute between two citizens of Iowa, when it ought to have confined itself to those between the citizens of Iowa and the citizens of New York, its final decree in the suit could have been reversed, on appeal, as erroneous, but the decree would not have been a nullity. To determine whether the suit was removable in whole or in part or not, was certainly within the power of the circuit court. The decision of that question was the exercise and the rightful exercise of jurisdiction, no matter whether in favor of or against taking the cause. Whether its decision was right, in this or any other respect, was to be finally determined by this court on appeal. As the circuit court entertained the suit, and this court, on appeal, impliedly recognized its right to do so, and proceeded to dispose of the case finally on its merits, certainly our decree cannot, in the light of prior adjudications on the same general question, be deemed a nullity."

Forsyth v. City of Hammond, 166 U.S. 506, 517, 518, 17 S.Ct. 665, 41 L.Ed. 1095; Treines v. Sunshine Mining Company, 308 U.S. 66, 76, 77, 78, 60 S.Ct. 44, 51, 84 L.Ed. 85, wherein the court said:

"One trial of an issue is enough. 'The principles of res judicata apply to questions of jurisdiction as well as to other issues,' *as well to jurisdiction of the subject matter as of the parties.*" (Emphasis added)

In a footnote to the sentence last quoted, the Supreme Court, reaffirmingly, alluded to Stoll v. Gottlieb, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104, wherein that court had earlier declared:

"After a federal court has decided the question of the jurisdiction over the parties as a contested issue, the court in which the plea of res judicata is made has not the power to inquire again into that jurisdictional fact. *We see no reason why a court, in the absence of an allegation of fraud in obtaining the judgment, should examine again the question whether the court making the earlier determination on an actual contest over jurisdiction between the parties, did have jurisdiction of the subject matter of the litigation.*" (Emphasis added)

Yanow v. Weyerhaeuser Steamship Company (9 Cir.) 274 F.2d 274, (especially discussion pp. 279 to 281); Menashe v. Sutton, (D.C.N.Y.) 90 F.Supp. 531, 532, 533; Morse-Starrett Products Company v. Steccone (9 Cir.) 205 F.2d 244; Radack v. Norwegian America Line Agency, Inc. (2 Cir.) 318 F.2d 538, 542; Goldfine v. United States (1 Cir.) 326 F.2d 456, 457.

In the instant context, this court is satisfied that the earlier rulings of this court accepting and administering the then challenged jurisdiction of subject matter, which rulings have severally been affirmed on direct appeal, are not now to be relitigated and abandoned.

This court also observes that, in an affidavit filed in these cases as recently as October 14, 1965, supportive of a motion for appointment of counsel in this post-decisional proceeding (concerning which, *vide praesertim infra*), the plaintiff himself, said, touching the character of these cases:

"Paul Rhodes, being first duly sworn upon oath, deposes and says that he is the plaintiff in each of the above

actions brought under the Civil Rights Statutes of the United States of America, and that no diversity of citizenship jurisdiction was claimed in each of the above actions, and that said action (sic) were to recover for violation of Federal Civil Rights."

That affidavit was filed, supra, after the filing in the cases of the pending Motions to Vacate. It was not until slightly later that he chose to repudiate the position which it discloses and upon which he had theretofore undeviatingly relied.

Next encountered is the present consequence of the history of each of these three cases, first, in this court, thereafter in the Court of Appeals, Eighth Circuit, and, finally, in the Supreme Court of the United States. By citation, supra, of the reported course of each of the cases in those courts, that history has already been brought into focus for the purpose of this aspect of the present ruling. It is not again set out herein in detail. It is sufficient, first, to recall that, substantially prior to September 27, 1965, when the prime Motions to Vacate judgments were filed, one in each of the cases, each such case had been determined in this court, and appealed to, and submitted in, the United States Court of Appeals, Eighth Circuit, and affirmed by the latter court; that denial had been made by the Supreme Court of the United States of plaintiff's petition in each case, addressed to that court, for a writ of certiorari to review the action upon such case of the Court of Appeals; and that the resulting mandate of affirmance had been issued and filed and entered in this court in each such case; and to recall, as well, the several dates as of which such successive actions were taken in each of the three cases. That recollection discloses the plight of each of the cases on the date when the now pending Motion to Vacate judgment in it was filed. In each such case, the Motion to Vacate judgment then filed demanded that this court vacate a judgment of dismissal made and given by this court, and affirmed on appeal by the Court of Appeals, Eighth Circuit, of which affirmance the Supreme Court of the United States had denied review. Moreover, that historical status persisted through the dates on which the plaintiff filed in each of the cases, both the supplement to Motion to Vacate Judgment,[13] and the second supplement to motion to vacate judgment on the merits.[14]

Now, in the face of the history of the three cases thus recalled, the several motions, as respectively supplemented, supra, prayed for and demanded that this court, in each case, vacate and set aside the final judgment by this court theretofore made and given, of which, on appeal, there had been an unequivocal affirmance, followed by the denial of certiorari, and the issuance and filing of the mandate of affirmance.

Moreover, although this court, on October 19, 1965, had taken submission, by oral argument, of the three prime motions to vacate judgments in the several cases, the supplement to motion to vacate judgments, and the second supplement to motion to vacate judgments on merits, in the three cases were not filed until shortly after October 19, 1965, (i.e. on November 2, 1965 and November 21, 1965, respectively), and hearing upon them was held by this court on January 31, 1966, supra.

But, before that hearing, the plaintiff had tendered to the Court of Appeals, Eighth Circuit, the consolidated motion in all of the three cases, for filing and submission in each of the three cases, which was, by order of that court, on January 10, 1966, filed in that court in each of the cases, and denied on the same day. With each of the cases in the position thus matured, the argument of January 31, 1966, supra, on the supplement, and second supplement to the Motion to Vacate in each case was held. And it was, thereafter, thus, after the final argument, that the Supreme Court of the

---

**13.** Filed on November 2, 1965, supra.

**14.** Filed on December 21, 1965, supra.

United States denied certiorari to review the rulings of the Court of Appeals, Eighth Circuit, made and entered on January 10, 1966.

Obedient to settled authority, this court now holds that it may not properly grant, in any of the three cases, the relief by the plaintiff sought in each of the cases, by his Motion to Vacate Judgment, and the Supplement and Second Supplement thereto. And it is persuaded that such conclusion is supported by the state of the record in each case just reviewed in the light of the considerations next advanced.

By way of textual statement, it is said in 7 Moore's Federal Practice 339, that:

"Where the appellate court has affirmed or reversed, then relief by the district court under 60(b) must reckon with the appellate court's mandate. 'The authorities seem uniform that a mandate from a reviewing court is controlling as to all matters within the compass of such mandate and as to such matters the district court, after remand, can take no further action.' At times a motion for relief will not raise matters that are within the compass of the mandate, and in that event the district court clearly has the power to proceed. *But where the action which the district court is asked to take under 60(b) would disturb the judgment which the appellate court's mandate ordered, or would otherwise be inconsistent with the mandate, the general doctrine is that the district court lacks power to proceed with the motion unless and until leave is granted by the appropriate appellate court.*" (Emphasis added)

The utter divergence of the relief sought by the pending motions from the affirmed judgments at which the present motions are severally directed may not be doubted.

The invulnerability to a trial court's intrusion upon, or disregard of, a judgment or decree founded in, or supported by, an appellate mandate, is devoid of novelty. For example, in 1897,

Mr. Justice Gray in In re Potts, 166 U.S. 263, 267, 268, 17 S.Ct. 520, 521, 522, 41 L.Ed. 994, wrote:

"When the merits of a case have been once decided by this court on appeal, the circuit court [by which name the trial court was then known] has no authority, without express leave of this court, to grant a new trial, a rehearing or a review, or to permit new defenses on the merits to be introduced by amendment of the answer. Ex parte Story, 12 Pet. 339 [9 L.Ed. 1108]; Southard v. Russell, 16 How. 547, [14 L.Ed. 1052]; Ex parte Dubuque & P. R. Co., 1 Wall. 69, [17 L.Ed. 514]; Stewart v. Salamon, 97 U.S. 361, [24 L.Ed. 1044; Gaines v. Rugg, 148 U.S. 228, 13 S.Ct. 611, [37 L.Ed. 432]. In this respect a motion for a new trial or a petition for a rehearing stands upon the same ground as a bill of review, as to which Mr. Justice Nelson, speaking for this court, in Southard v. Russell, above cited, said: 'Nor will a bill of review lie in the case of newly-discovered evidence after the publication or decree below, where a decision has taken place on an appeal, unless the right is reserved in the decree of the appellate court, or permission be given on an application to that court directly for the purpose. This appears to be the practice of the court of chancery and house of lords, in England; and we think it founded in principles essential to the proper administration of the law, and to a reasonable termination of litigation between the parties in chancery suits.' "

In 1953, the United States Court of Appeals, Third Circuit, in Butcher & Sherrerd v. Welsh (3 Cir.) 206 F.2d 259, in the course of its application of Rule 60 (b), cited and followed In re Potts, supra, and, itself, said, *inter alia:*

"Where a judgment has been affirmed on appeal and the mandate handed down it is beyond the power of the lower court to disturb the judgment without leave of the appellate court. This procedure is required by long seated principles.

\* \* \* \* \* \*

"Respondent contends that recent amendments to Rule 60(b) of the Federal Rules of Civil Procedure confer upon the trial court the power to grant relief from the operation of a judgment without prior approval of the appellate court. We cannot subscribe to this contention. Rule 60(b), while enlarging the power of the District Courts over judgments without respect to the running of the term of court, does not confer upon District Courts the power to alter or amend a judgment which has been affirmed by this court or the Supreme Court, for such alteration would affect the decision of the reviewing court, which it is not within the power of the District Courts to do."

The Court of Appeals, Eighth Circuit, has consistently recognized the foregoing negation of the existence in the United States District Court, without the direction or consent of the Court of Appeals, of the power to vacate or modify, or otherwise to disturb, a judgment of this court after its affirmance by the Court of Appeals. Thus, in Hartman v. Lauchli (8 Cir.) 304 F.2d 431, supra, that court, speaking through Judge John B. Sanborn, said:

"It is the judgment on Count VII, which was affirmed by this Court on appeal and which the Supreme Court declined to review on certiorari (353 U.S. 965, 77 S.Ct. 1048, 1 L.Ed.2d 915) that the defendants asked the District Court to vacate.

"There can be no question that the affirmance by this Court of the judgment of the District Court on Count VII conclusively and finally established (after the Supreme Court had denied certiorari) that the United States during the period referred to in that court was, by virtue of matured tax claims against the bankrupt, a creditor with a provable debt, and that the diversion of funds by the bankrupt was in fraud of creditors and recoverable by the Trustee.

"The appellant contends that the ruling that the United States was a creditor was erroneous. But if that were so, what of it? The District Court and this Court unquestionably had jurisdiction to decide that issue. They decided it. Jurisdiction to decide is jurisdiction to make wrong, as well as right, decisions.

"Rule 60(b) was not intended as a substitute for a direct appeal from an erroneous judgment. The fact that a judgment is erroneous does not constitute a ground for relief under that Rule.

"What we have said is not to be construed as any indication that we think the decision with respect to Count VII was in fact erroneous. The District Court obviously did not err in denying the motion of the defendants to vacate and set aside the final judgment in this case. Moreover, after this court had affirmed the judgment of the District Court on Count VII, that court, without the consent of this Court, could not have disturbed the judgment. The Motion to Vacate might well have been denied on the authority of Thornton v. Carter, 8 Cir., 109 F.2d 316." [15]

For rulings essentially to the same effect, see Obear-Nester Glass Company v. Hartford Empire Company (8 Cir.) 61 F.2d 31; Simonds v. Norwich Union Indemnity Company (8 Cir.) 73 F.2d 412; Home Indemnity Company of New York v. O'Brien (6 Cir.) 112 F.2d 387; Geuder, Paeschke & Frey Company v. Clark, (D.C.Wis.) 26 F.R.D. 223 (aff'd 7 Cir., 288 F.2d 1, 85 A.L.R.2d 766, cert. den. 368 U.S. 826, 82 S.Ct. 47, 7 L.Ed.2d 30), and annotation to that case 85 A.L.R. 2d at p. 772 et seq.; Price v. United States (D.C.Va.) 195 F.Supp. 203 (in association with Price v. United States (D. C.Va.) 179 F.Supp. 309); Wilson Research Corporation v. Piolite Plastics Corporation (D.C.Mass.) (two opinions with single caption), 234 F.Supp. 234, with related and cooperating opinion un-

---

15. For whose individual citation, *vide infra.*

der identical caption (1 Cir.) 336 F.2d 303.

The opinions just cited touching the limitation upon the allowable action by the district courts in matters of this character, following determined appeals, have largely been selected from cases in which, as here, the Courts of Appeals have affirmed the initial rulings of the District Courts. But it conclusively appears that the controlling consequence of the mandate of a court of appeals over a district court's later action is equally operative, whether the Appellate Court's ruling be one of affirmance or one of reversal, or of modification. Supportive of that position, citation is made of Hagerott v. Adams (8 Cir.) 61 F.2d 35; Thornton v. Carter (8 Cir.) 109 F.2d 316; City of Orlando v. Murphy (5 Cir.) 94 F.2d 426; Tribble v. Bruin (4 Cir.) 279 F.2d 424, 427. In the City of Orlando case cited, the court, speaking through Circuit Judge Hutcheson, and with the support of authorities, employs the following language:

> "The rules governing procedure in a federal trial court after reversal are well settled. Where the merits of a case have been once decided on appeal, the trial court has no authority, without express leave of the appellate court, to grant a new trial and rehearing, or a review, or to permit new defenses on the merits to be introduced by amendment. Thus, if a case is affirmed on appeal, there is res adjudicata, and no power exists after the term [16] to alter the decision. The same is true where, on reversal, a mandate is issued requiring the entry of a specific judgment. Where the reversing decision directs the entry of no specific judgment, but remands the cause for further proceedings in accordance with the opinion, the trial court, though receiving the cause for a retrial, is bound by all its rules, as the law of the case."

And see also the language of the last cited *Tribble* case to like effect, but with special emphasis on the imperative necessity of explicit direction, or permissive leave, of the Appellate Court, as a warrant for any departure from the mandate by the trial court in an action to it remanded upon earlier review. And notation is also made of Schneider v. Duggan, 8 Cir., 364 F.2d 316, opinion filed August 17, 1966, and cases cited in footnote 1 thereto.

 Shortly stated, what the plaintiff seeks in his several Motions to Vacate Judgments, as filed herein in each of the three cases, and as twice supplemented, supra, is the nullification in its entirety of each case in which such filings were made, to be accomplished by the absolute cancellation and vacation of the judgment in each case, and that, despite the antecedent affirmance on appeal of each such judgment. When those three motions were separately filed on September 27, 1965, when, also, they were submitted through oral argument on October 19, 1965, even when the several supplements to motions were filed on November 2, 1965, and the several second supplements to motions were filed on December 21, 1965, the plaintiff had made no preliminary or supportive motion or motions upon the subject before the Court of Appeals, Eighth Circuit. Such filing in each of the cases was made in the form of the motion, supra, filed on January 10, 1966, and was denied on its filing, supra. So, when the Supplements to Motions and the Second Supplements to Motions, were, by order of this court of January 19, 1966, set for hearing on January 31, 1966, and when on the last identified date, argument was submitted on the Supplements to Motions and Second Supplements to Motions, the plaintiff's separate motions addressed to the Court of Appeals, Eighth Circuit, had already been denied by that court. They, and each of them, still stand so denied. In that setting, and upon the basis of the authorities recalled and discussed herein having relation to the appeal and affirmance of this court's judg-

---

16. A limitation no longer possessing its former significance, *vide supra.*

ments in the three several cases, this court is convinced that it possesses no authority to vacate the judgments at which the plaintiff's motions to vacate judgments, and supplements to motions, and second supplements to motions, are directed, or any one or more of them.

Moreover, in and by its rulings of January 10, 1966, denying the plaintiff's several motions, one in each of the three cases, the Court of Appeals, Eighth Circuit, both denied the plaintiff's motions directed to the Court of Appeals in the three several cases, praying that the Court of Appeals, Eighth Circuit, itself, vacate the judgments theretofore made and given and affirmed in the three separate cases; and also denied the plaintiff's motions, addressed to the Court of Appeals, Eighth Circuit, for orders of that court directing, or authorizing, this court so to vacate said judgments, and each or any of them. Confronted by the record thus made, this court simply may not grant the plaintiff the relief which he seeks. In passing, and upon the instructive authority of the separate opinion of Mr. Justice Frankfurter (p. 488, 73 S.Ct. 437), and the expressions of the relevant views of Mr. Justice Burton and Mr. Justice Clark (p. 488, 73 S.Ct. 431), and of Mr. Justice Black and Mr. Justice Douglas (p. 513, 73 S.Ct. 449), all in Brown v. Allen, 344 U.S. 443 et seq., 73 S.Ct. 397, 97 L.Ed. 469, this court attributes no presently controlling significance to the denial by the Supreme Court of the United States of the petition for writ of certiorari sought by the plaintiff herein for the review of the denial, on January 10, 1966, of the plaintiff's motions then before the Court of Appeals in these cases. The Supreme Court's denial of the writ then sought simply made final the Appellate Court's action of January 10, 1966. That which has just been set down in the way of the disclaimer of power in this court to do what, by the plaintiff, it is presently invited to do, reflects only one, but a persuasive, basis for the ruling now announced, and is not intended as the slightest disparagement of any other reason, or reasons,

for such ruling. It is, however, regarded as a persuasive basis for the ruling herewith announced.

The plaintiff in his Motions to Vacate Judgment, and in the opening sentence thereof, joins with his prayer for the vacation of the several judgments, a prayer for permission to amend his complaint in each case by attaching thereto a paragraph in language which he exactly sets out. For convenient reference, that language has already been copied herein, supra. It is not now repeated. But it is sufficiently recalled that, by the language thus set out, the plaintiff reiterates his argumentative contention in the three cases, that, by proceeding in case No. 4819, in the District Court of Morrill County, Nebraska, on November 21, 1960, forthwith upon its denial of the present plaintiff's motion for a continuance of the further trial of the case of State of Nebraska v. Rhodes (being such case No. 4819), the District Court of Morrill County, Nebraska, lost its jurisdiction over the person of the plaintiff herein (being the defendant in that case No. 4819). In consequence whereof, he further charges that the judgment thereupon pronounced against the present plaintiff, as defendant in that case No. 4819, was absolutely void. And he appears further to contend that as a result of the nullity thereby arising in case No. 4819 (by plaintiff herein asserted, and mentioned in the last preceding sentence), this court possesses and has possessed no jurisdiction over his person in cases herein numbered 01322, 01682 and 01784, or any of them, although it was he alone who had invoked, and theretofore contended for, such jurisdiction.

 But the position just mentioned is devoid of merit for at least two reasons. The first such reason is that, even if the trial history in Morrill County, Nebraska, case No. 4819 resulted in that court's loss of personal jurisdiction in the case over Mr. Rhodes from and after it proceeded to the completion of his trial at once upon the denial of his motion for continuance, that circumstance would not nullify this court's jurisdic-

tion in the three cases numbered 01322, 01682 and 01784, instituted in this court by Mr. Rhodes himself. It might materially have affected the course of this court's judgment, or of the judgment of the Court of Appeals, in these three cases, or one or more of them. But it could not have intercepted this court's jurisdiction to adjudicate.

Moreover, there is utterly no merit in the plaintiff's contention of the ousting of the jurisdiction of the District Court of Morrill County, Nebraska, to proceed in its case No. 4819, from and after the denial of its defendant's Motion for a continuance of the residual phase of the trial thereof. In its earlier reported opinions severally delivered in cases numbered 01322, 01682 and 01784, this court has correctly observed that the trial in case No. 4819 had largely been conducted in open court, with participation by Mr. Rhodes, on two successive earlier days, namely, on September 6 and 7, 1960. Further testimony being considered appropriate, Mr. Rhodes on September 24, 1960 was served with notice that hearing for that purpose was set for October 10, 1960 at 10:00 o'clock A.M. Mr. Rhodes thereupon sought and obtained some continuances of that supplemental hearing. But on October 31, 1960, the trial judge by order regularly entered, continued the further hearing in the case to November 21, 1960, at 10:00 o'clock A.M. Of that order, a journal entry was filed in case No. 4819 on November 14, 1960. On the following day, that is, on November 15, 1960, the plaintiff herein was, by a Deputy Sheriff of Denver County, Colorado, and at a designated address in the city and county of Denver, Colorado, served with a written notice given in the name of, and signed by, the attorney of record prosecuting the contempt proceeding, namely James L. Macken, County Attorney of Morrill County, Nebraska, of which the entire language (omitting caption and signature) follows:

"TO PAUL E. RHODES:

You are hereby notified that the court has set a hearing for all of the matters pending in the above case for November 21, 1960 at 10:00 o'clock A.M.

You are further notified that in the event the court should overrule a further motion for continuance on your part, the State will ask the court to proceed to complete the trial notwithstanding your absence."

That notice, so served, was filed in case No. 4819 on November 18, 1960. The pertinence—obviously, too, the motivating occasion—of the concluding sentence and paragraph of the quoted notice is found in Mr. Rhodes' earlier, and at least partially granted, demands for continuances of the hearing then set in that proceeding. In any event, it constituted both a notice and a warning to him. Nevertheless, in the morning of November 21, 1960, thus, in essence, concurrently with the time for the opening of the supplemental hearing, Mr. Rhodes did not appear before the court; but he then caused to be filed in the case a motion for a further continuance on the ground (in common with earlier like motions by him in the proceeding) of his ill health. Responsive to that motion for continuance, the State, as plaintiff (the trial judge permitting, in the exercise of his statutory authority to do so) produced evidence of activity on the part of Mr. Rhodes challenging the reality of his professed illness. And the court denied the motion for continuance, and directed that the trial proceed. Brief further hearing in the case was had without the presence of Mr. Rhodes, and at the conclusion thereof, the trial court (Richard M. Van Steenberg presiding) made and entered the judgment against Paul E. Rhodes so frequently referred to, and discussed in these cases.

This court, sitting within Nebraska, has presently under its scrutiny an aspect of the practice in the trial courts of Nebraska with which almost any member of the state's bar who has engaged substantially in the practice of his profession in those trial courts is familiar. In part, it arises out of the orderly and efficient administration of the trial calendars of those courts. Concerning the

continuance of the time for the trial of contested cases in the District Courts of Nebraska, Section 25–1148 R.R.S. Neb. Reissue of 1964 (in force through 1960) provides:

"CONTINUANCE OF CAUSES PENDING; MOTION; AFFIDAVITS; ORAL TESTIMONY; ORDER; EFFECT. Whenever application for continuance or adjournment is made by a party or parties to any cause or proceeding pending in the district court of any county, such application shall be by written motion entitled in said cause or proceeding and setting forth the grounds upon which said application is made, which motion shall be supported by the affidavit or affidavits of person or persons competent to testify as witnesses under the laws of this state, in proof of and setting forth, the facts upon which such continuance or adjournment is asked. After the filing of such application for continuance and the affidavits in support thereof, the adverse party shall have the right to file counter affidavits in said matter. *Either party may, upon obtaining leave of the court, introduce oral testimony upon the hearing of such application. The court may, upon the hearing, in its discretion, grant or refuse such application; and no reversal of such cause or proceeding by the Supreme Court shall be had on account of the action of the court in granting or refusing such application, except when there has been an abuse of a sound legal discretion therein by the lower court."* (Emphasis added)

 The Supreme Court of Nebraska has repeatedly declared that "[a]n application for postponement of time of trial of a criminal case is addressed to the sound discretion of the trial court, and, in the absence of abuse of discretion disclosed by the record, a denial thereof is not error," Darlington v. State, 153 Neb. 274, 44 N.W.2d 468, O'Rourke v. State, 166 Neb. 866, 90 N.W. 2d 820; Cox v. State, 159 Neb. 811, 68 N.W.2d 497. In the case last cited, a

criminal prosecution, the trial court proceeded to trial forthwith upon the denial of a motion for a continuance on the ground of the inadequacy of time for the preparation for trial by defendant's counsel, who had been employed only three hours (inclusive of the noon hour) before the opening of the trial. Yet, the Supreme Court of Nebraska declared that the trial court's action was without error and that: "A party to an action is not entitled to have his case continued as a matter of right. The question of whether or not a continuance shall be granted depends first upon a statutory showing. After the showing has been made, whether or not a continuance shall be allowed is a matter of discretion for the trial court." And it added that: "in determining whether or not discretion was abused by failure to grant a continuance * * * it is proper to look to the entire record in the case." See also Sundahl v. State, 154 Neb. 550, 48 N.W. 2d 689 (affirming a judgment pronouncing a sentence to capital punishment upon the completion of a trial, opened and commenced at once upon the denial of a motion by defendant for continuance); Phillips v. State, 157 Neb. 419, 59 N.W.2d 598, 58 A.L.R.2d 1141; Hubbard v. State, 65 Neb. 805, 91 N.W. 869; Svehla v. State, 168 Neb. 553, 96 N.W.2d 649; Maher v. State, 144 Neb. 463, 13 N.W.2d 641; Cornell v. State, 138 Neb. 708, 294 N.W. 851; Flannigan v. State, 127 Neb. 640, 256 N.W. 321; Kerr v. State, 63 Neb. 115, 88 N.W. 240.

 It has also consistently been held in Nebraska in civil litigation that "[a]n application for continuance is addressed to the discretion of the trial court, and the ruling thereon will not be disturbed in the absence of a clear abuse of discretion." Stratton v. Dole, 45 Neb. 472, 63 N.W. 875; State ex rel. Nebraska State Bar Ass'n v. Jensen, 171 Neb. 1, 105 N.W.2d 459; (a disbarment proceeding, and, thus, though civil in character, possessing highly penal implications); Middaugh v. Chicago and Northwestern Railway Company, 114 Neb. 438, 208 N.W. 139 (in which it was

emphasized that the burden of showing an abuse of discretion in refusing a continuance is upon him who asserts it); Kulhanek v. Kulhanek, 134 Neb. 349, 278 N.W. 563 (in which it was held that one who purposefully and voluntarily absented himself from the court when his motion for continuance was submitted could not complain because of such ruling, and of the immediate inception of the trial which had theretofore been set).

■ In State v. Rhodes, case No. 4819 in the District Court of Morrill County, Nebraska, the court, by a journal entry, had made a timely setting of the completion of the already largely conducted trial to commence at 10:00 o'clock A.M. on November 21, 1960. On October 14, 1960 a written draft of that signed entry was entered in the files of the case. On October 15, 1960 the county attorney prosecuting the proceeding caused to be served on Mr. Rhodes the notice and warning of which a copy appears herein, supra, informing him of the date for further trial and explicitly admonishing him that if, meanwhile, he should attempt, without success, to obtain further postponement of trial, the state, through the County Attorney, would demand that the trial proceed as set, even if Mr. Rhodes should be absent from the court. In the face of that situation, Mr. Rhodes in the morning of the date set for further trial, caused to be filed in the case a motion for further continuance, but did not appear in court, either in person or by counsel. He must be considered to have pursued that course with full notice and with the awareness that, unless the motion for continuance were granted, the trial, pursuant to an earlier setting of which he had due notice, would proceed forthwith. As a mature practicing attorney, he must be considered to have proceeded understandingly. And one thing which he understood was that a litigant whose case is set for trial at a time certain may not arbitrarily frustrate such setting by filing, at or immediately before such trial time, a motion for a continuance, and failing at the

time fixed for trial to appear, even to support his motion for continuance.

The inescapable conclusion is that, upon the basis of the record in case No. 4819, on which Mr. Rhodes relies and which he has himself pleaded, the action taken on November 21, 1960 by the District Court of Morrill County, Nebraska was not even error, much less a legal nullity resulting in the ouster of that court's jurisdiction over the person of Mr. Rhodes. Let it be remembered, too, that Mr. Rhodes initiated an appeal from the judgment and sentence pronounced against him on November 21, 1960, but failed to pursue his appeal, and suffered an affirmance. He, thus, abandoned the very proceeding wherein, if there were error in the proceeding against him, the judgment and sentence upon him could have been reversed. This court has heretofore rejected in each of cases numbered 01322, 01682 and 01784, the plaintiff's asserted legal position that his sentence in case No. 4819 was and is void. It now explicitly adheres to that rejection.

And, respecting plaintiff's prayer for leave to amend his complaints in each of cases numbered 01322, 01682 and 01784, by adding or attaching to each such complaint the language already quoted herein, this court denies that prayer, but, so doing, declares that it has considered and does consider the language thus quoted as reflective of the plaintiff's position therein advanced, but regards that position and the language reflecting it as having essentially been addressed to this court in the submission of each of these three cases upon the several motions to dismiss, upon which this court's earlier rulings were severally made.

Turning to the Supplement to Motion to Vacate Judgment filed in each of these cases on November 2, 1965, supra, this court now observes that it, first, presents argumentatively in the paragraphs of that supplement numbered from 1 to 7, both inclusive, material which was appropriate for submission and consideration

upon the appeal heretofore taken and determined in each of the cases. It is not now formally discussed or made the subject of determination. For this proceeding is not employable as a substitute for appeal, or as a device for the circumvention of the results of an appeal actually taken, and pursued to final ruling.

Secondly, in that supplement, and in its paragraphs numbered 8 to 12, both inclusive, and 14 and 15, the plaintiff alludes to what he denominates, the "judgment of the United States District Court of Nebraska (sic) case Rhodes v. Edmondson, case Civil No. 02055 [17] in United States District Court of Nebraska" (sic). It is assumed that by the "United States District Court of Nebraska" he means to identify this court. No other assumption would be supportable.

Shortly stated, there is not, and never has been, any "Judgment of the United States District Court for the District of Nebraska, case Rhodes v. Edmondson, case Civil No. 02055 in the United States District Court for the District of Nebraska." What the plaintiff pretends thus to describe in his "Supplement to Motion to Vacate Judgment," particularly in paragraph No. 8 thereof, is simply the convenient identifying designation of a registration, under Title 28 U.S.C., section 1963, in this court, by the filing of a certified copy, of a default judgment for $450,500.00, with interest and costs (of which judgment $225,-000.00 is identified as for punitive damages) made and given in and by the United States District Court for the District of Kansas on April 15, 1964 in favor of the plaintiff therein, Paul E. Rhodes, and against the defendant therein, Harry W. Edmondson (a prison guard in the Nebraska State Penitentiary during plaintiff's confinement there, or a portion thereof), in an action then and therein pending as "Civil Action File No. T-3405," wherein Paul E. Rhodes was the sole plaintiff and Harry W. Edmondson was the sole defendant. With the certified copy of the judgment is also filed a certified copy of the charge to the jury in that case of the Judge then presiding, of the United States District Court for the District of Kansas. Those two certified copies were filed together in the office of this court with and by the clerk thereof, as a purely clerical operation, and without any order or direction or other action by this court, or any judge thereof; and to such filing for the sake of the identifying record, the clerk of this court attributed the file number, "Civil 02055." Without deciding whether the certified copy of the court's charge to the jury was appropriately filed here under Title 28 U.S.C., section 1963, it is observed that such certified copy of charge affirmatively and significantly declared (Instruction No. 4) that:

"In view of the fact that plaintiff has been granted a default judgment, the allegations of the complaint must be considered by you as a conclusive adjudication that the plaintiff's civil rights herein have been violated and that the defendant herein has deprived this plaintiff of certain civil rights in the manner set forth and described in plaintiff's complaint.

"Under such circumstances as I have instructed you previously, the only matter for you to determine will be the amount of damages which the plaintiff has sustained, since the claims of the plaintiff are not denied by the defendant."

The plaintiff in his present pleading demands that this court take judicial notice of the judgment thus registered here as Civil 02055. And, in his presentation of the instant Motions to Vacate and of the Supplement and Second Supplements to such Motions to Va-

<hr>

17. Let it be made clear that while in his Supplement to Motion to Vacate the plaintiff identifies the citation to which this footnote is appended as "Civil No. 02555," the file to which he refers is actually "Civil No. 02055" of this court. There is no file No. 02555 of this court even remotely related to these cases, or any of them. So this court, in its observations respecting the material thus aimed at by the plaintiff correctly refers to it as No. 02055.

cate, he appears to seek for it the stature of *res judicata,* or *stare decisis,* in these cases. Judicial notice is naturally taken of the filing here of the transcript of the judgment of the United States District Court for the District of Kansas, and by logical inference of the entry of such judgment in and by that court. But that notice is of the entry, not in or by this court, but in and by the United States District Court for the District of Kansas, in a suit therein pending wherein the present plaintiff was the sole plaintiff, and Harry W. Edmondson,[18] a total stranger to these three cases, or any of them, was the sole defendant. Moreover, as the certified copy of the trial court's charge indicates—and, this court understands, correctly—the plaintiff's demands in that action were unresisted, the defendant, Harry W. Edmondson made default and suffered, and cooperated in, the entry of a default judgment, and did not assail, in fact also cooperated in, the plaintiff's proof of his alleged damages. Because this court may have occasion hereafter to pass upon sundry aspects of that judgment, it appears to be orderly and prudent presently to refrain from further analysis of, or observations concerning, it. But this is said with assurance and without reservation. The judgment against Harry W. Edmondson, a stranger to these cases, is not at all controlling here as *res judicata.* And for the same reason, as well as because of its status as a default judgment, cooperatively pursued and procured by both of the litigants in it, the defendant as well as the plaintiff, it is not effective under the principle of *stare decisis.* In fact, it has no presently controlling consequence, whatsoever.

By paragraph numbered 13 of the Supplement to Motion to Vacate, the plaintiff requests that the court take judicial notice of the case entitled "In the Matter of the Application of John Greenholtz", being Civil No. 01854 in this court. It may sufficiently be said that the court has examined that case and considers that it has no present relevance or materiality. It involved the erection of protective procedures, incident to the procurement of evidence for contemplated use by one or more of the parties of the then pending Case No. T–3405, supra.

And by paragraph No. 15 of the Supplement to Motion to Vacate, the plaintiff simply asserts that "it was the duty of Clarence A. H. Meyer, as Attorney General of Nebraska, to represent Harry W. Edmondson in Civil Case No. 02055." Whether such a duty did or did not exist, or whether upon proper demand, Mr. Meyer failed to perform any real duty in that behalf, does not appear. And, in the context of the plaintiff's present Motion to Vacate, as supplemented, any such duty, or its neglect, appears to this court to be immaterial.

Special consideration has been given by this court to a subsidiary pleading common to, and identical in, all three of these cases. It was filed on October 14, 1965, in case No. 01322 as filing 93, in case No. 01682 as filing 43, and in case No. 01784 as filing 24. It is entitled, "AFFIDAVIT AND MOTION FOR APPOINTMENT OF ATTORNEYS TO REPRESENT PLAINTIFF." That affidavit and motion (a single pleading), in a long opening paragraph, recalls repetitively sundry portions of the proceedings in case No. 4819, in the Morrill County, Nebraska, District Court, supra,

---

18. Before leaving the subject of the judgment in Civil Action File No. T–3405, in the United States District Court for the District of Kansas, of which registration under Title 28 U.S.C., section 1963 in No. 02055 in this court was made, supra, it is finally observed that Harry W. Edmondson, the judgment debtor therein, is now dead. The court has no perceptible occasion to consider whether,

standing alone, his death has any present significance in relation to the instant controversy. But it is at least interestingly observed at this point that the Administrator of the Estate of Harry W. Edmondson, Deceased, under appointment by the Probate Court of Doniphan County, Kansas, is Paul E. Rhodes, the plaintiff in these actions.

upon which plaintiff's claims in all these actions are based. That paragraph need not here be repeated or analyzed in detail, for it principally reiterates or restates averments theretofore made by plaintiff in his complaints in the instant three cases, and in his several Motions to Vacate, as supplemented, supra, and already dealt with by this court. Parenthetically, prepared and filed shortly before the filing, on November 2, 1965, of the Supplement to Motion, and on December 21, 1965, of the Second Supplement to Motion, it persists in and repeats the jurisdictional averment of the several complaints, resting this court's jurisdiction in the nineteenth century Federal Civil Rights Act. Comparably repetitive, and regarded as unnecessary to repeat, are several sentences of the second and remaining paragraph of that Affidavit and Motion.

But, as assertions underlying the motion, the "affidavit" portion of that pleading, in its second paragraph, also states,

"That many of the defendant (sic) in some of the actions above are present or past members of the Nebraska Supreme Court, or had recently departed therefrom at the time of filing of said action. That this Plaintiff has attempted to employ Nebraska attorneys to represent him in each of said action (sic) above, all Nebraska attorneys are required to be members of the Nebraska State Bar Association, and that this plaintiff has been unable to employee (sic) an attorney to represent and appear for him in any of the above entitled action (sic), the reason being given this affiant" (i. e. Paul E. Rhodes, the plaintiff) "by said Nebraska attorneys that they are afraid to appear for and represent this plaintiff for fear of retaliation of the Nebraska Supreme Court and the Nebraska State Bar Association upon them and their clients, and therefore this affiant has been unable to secure an attorney to represent him in the above entitled actions in the United States District Court of Nebraska

(sic). This plaintiff has further attempted to secure the services of attorneys from other states to represent him in these Actions in the United States District Court for the District of Nebraska, and the said attorneys giving the same reasons as the Nebraska attorneys. That this affiant cannot now secure an attorney, Member of the Nebraska State Bar Association to represent him in the above entitled actions, and because of poverty can not secure the services of an attorney from outside of the state of Nebraska to represent him in the cases at bar."

And the heart of the pleadings' factual effort and objective is contained in the following and concluding language of its second and final paragraph, and in its prayer, of which copies successively follow:

"That this plaintiff believes that the right to be represented by an attorney is a part of due Process of Law (sic). That all Nebraska attorneys are members of a CLASS, Members of the Nebraska State Bar Association, opposing this plaintiff and have raised the annual assessment on all members of the Class (sic), Members of the Nebraska State Bar Association to raise a fund with which to fight and oppose this plaintiff. That this plaintiff could (sic) not he believes receive due process of law while represented by a member of said Class (sic), if this court were to appoint one of them to represent this affiant. That this Plaintiff believes he is now entitled to have this case declared an action under 28 U.S.C.A. 1915 and that this court should appoint attorneys to represent this plaintiff not Members (sic) of said Class (sic) and that these cases proceed in *forma pauperis*."

"Wherefore, this plaintiff now prays and demands and moves this court for an order that the court declare these cases to be an actions (sic) under 28 U.S.C.A. 1915 and further that the cases proceed in *forma pauperis*, and further that this court appoint competent attorneys to represent this

plaintiff, and further that the attorneys appointed to represent this plaintiff in said cases not be members of the class; the NEBRASKA STATE BAR ASSOCIATION, and for such other and further relief as is just and equitable under the circumstances."

So far as seems to be material to the foregoing request or demand, the language of Title 28 U.S.C. section 1915, supra, is quoted as follows:

### AS TO AUTHORIZATION TO PROCEED GENERALLY IN FORMA PAUPERIS:

"(a) Any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees and costs or security therefor, by a person who makes affidavit that he is unable to pay such costs or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that he is entitled to redress.

\* \* \* \* \* \*

(c) The officers of the court shall issue and serve all process, and perform all duties in such cases. Witnesses shall attend as in other cases, and the same remedies shall be available as are provided for by law in other cases."

### AS TO PROVISION OF COUNSEL

"(d) The court may request an attorney to represent any such person unable to employ counsel
\* \* \* "

### GENERALLY APPLICABLE SANCTION:

"(d, concluded) The court \* \* \* may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious."

It will have been observed that the Affidavit and Motion for Appointment of Attorneys was filed in each of the three cases on October 14, 1965, supra, long after the entry on different earlier dates of the several judgments of this court in the three separate cases, and the affirmance of each such judgment by the Court of Appeals, and the denial by the Supreme Court of the United States of certiorari to review such several affirmances, supra. It was, therefore, filed some nineteen days after the service, and seventeen days after the filing, in each case of the plaintiff's Motion to Vacate Judgment therein, and only five days before the hearing upon the three such motions, one in each case; and it was drawn to the attention of the hearing judges at or immediately before the time set for such hearing. In the then existing circumstances, the court directed that the hearing proceed; and it did so proceed, the plaintiff appearing and participating in his own behalf. He also appeared and participated in his own behalf in the hearing of January 31, 1966, upon his several Supplements and Second Supplements to Motions to Vacate. He has, besides, presented typewritten briefs competently, if not convincingly, supporting his positions in relation to the Motions as supplemented. Actually, each of the cases stands submitted upon the issues tendered by those post-decisional pleadings, and was almost completely submitted when the "Affidavit and Motion for appointment of Attorneys" was filed in each of those cases.

■■ Each of the three cases is a civil action, not a criminal prosecution. That is no less true, notwithstanding the fact that case No. 4819 in the District Court of Morrill County, Nebraska [19] was a proceeding upon an accusation of contempt of court. An action to obtain punishment for contempt of court is not itself a criminal proceeding, even though it may result—as case No. 4819 did result—in a sentence to the payment of a fine or to imprisonment or

---

19. Out of which these three cases are by the plaintiff said to have arisen.

both. The plaintiff's objective in these three cases, realistically understood, was and is the procurement against the defendants severally included in each such case, of a very large money judgment, plus costs. That is a correct statement despite the prayer of his complaint's so called "Third Cause of Action" in case No. 01322 for injunctive relief against his further imprisonment, current at the time of the filing of that, the earliest of the three, complaints. The passage of time and the completion of that sentence have long since eliminated the practicality of that portion of the prayer. In passing, it is observed that plaintiff's prayers for money damages (in addition to costs) amount, in case No. 01322, to the sum of $4,200,000.00; in case No. 01682 to the sum of $8,400,000.00; and in case No. 01784 to the sum of $8,400,-000.00 (taking into consideration a palpable oversight in the prayer of the last identified case, and also disregarding a possible, but improbable, inference that the plaintiff demands a further sum of $4,200,000.00 in case No. 01682).

It is now stated simply—and will not be repeated—that the court is not here confronted in any manner with the requirement of the Sixth Amendment of the Constitution ·of the United States, wherein it is declared that,

"In all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defence."

This is no "criminal prosecution." The instant moving party is no "defendant," but rather the plaintiff in civil actions in pursuit of large monetary recoveries. And he seeks such recoveries, not by way of "defense," but through aggressive civil litigation wherein he is the sole affirmatively moving litigant.

■■ Equally inapplicable is Rule 44, Federal Rules of Criminal Procedure, wherein it is provided that,

"If the defendant appears in court without counsel, the court shall advise him of his right to counsel and assign counsel to represent him at every stage of the proceeding unless he elects to proceed without counsel or is able to obtain counsel."

That rule, designed to implement the Sixth Amendment of the Constitution of the United States, speaks for the protection alone of a "defendant" brought into court for prosecution and punishment on a charge of his violation of the criminal law of the United States. It has no reference to a plaintiff in a civil action in a district court of the United States, bent on the procurement of a judgment for the payment to him of money in the way of damages as against some other person or persons as defendant or defendants.

■■■ The granting of the privilege—and it is a "privilege"—not a "right"—to institute, or to proceed with, a civil action in *forma pauperis* is a matter within the discretion of the trial court, and in civil actions for damages should be allowed only in exceptional circumstances. Higgins v. Steele (8 Cir.) 195 F.2d 366; Gershon v. United States (8 Cir.) 243 F.2d 527; Weller v. Dickson (9 Cir.) 314 F.2d 598, 600; Jefferson v. Heinze (D.C.Cal.) 201 F.Supp. 606, 607. And in the present context, before leave to proceed in *forma pauperis* may be granted, the circumstances, thus exceptional, must favor—not repel—the grant of leave to proceed in *forma pauperis*.

Moreover, only in the presence of unusual circumstances, should counsel be appointed for the plaintiff in such cases. United States, ex rel. Gardner v. Madden (9 Cir.) 352 F.2d 792; Weller v. Dickson (9 Cir.) 314 F.2d 598; Jefferson v. Heinze (D.C.Cal.) 201 F.Supp. 606; Wilson v. Ellis (D.C.Tex.) 193 F.Supp. 526, 527.

■■■ And, even if and when leave to prosecute, or to proceed with, a civil suit in *forma pauperis* be granted, the appointment of counsel in behalf of the plaintiff is permissive, not mandatory, and is subject to the caution offered in the last preceding sentence. Then, too, such appointment should not be made upon the demand of a litigant who ap-

pears himself to be fully able competently to handle the matters involved. Davis v. United States (7 Cir.) 214 F.2d 594, 595; Temple v. Pergament (D.C.N.J.) 235 F.Supp. 242. The present plaintiff possesses such ability and competence. Nor should leave to proceed in *forma pauperis* be granted, or the appointment of counsel for a plaintiff in a civil action for the recovery of damages be made, if, upon due examination of the tendered complaint, that pleading be determined to be devoid of merit, or to be inadequate to present a substantial claim worthy of consideration in litigation, or to be vulnerable to a motion to dismiss for failure to state a claim on which relief can be granted, or by reason of the defendants' immunity to suit of the character involved. Davis v. United States (7 Cir.) 214 F.2d 594, 595, 596; Taylor v. Steele (8 Cir.) 191 F.2d 852; Taylor v. Steele (8 Cir.) 194 F.2d 864 (C.D. 343 U.S. 973, 72 S.Ct. 1080, 96 L.Ed. 1367); Temple v. Pergament (D.C.N.J.) 235 F.Supp. 242; Jefferson v. Heinze (D.C.Cal.) 201 F. Supp. 606, 607; Ligare v. Harries (7 Cir.) 128 F.2d 582; Higgins v. Steele (8 Cir.) 195 F.2d 366, 368; Gershon v. United States (8 Cir.) 243 F.2d 527; Wilson v. Ellis (D.C.Tex.) 193 F.Supp. 526.

And the court's denial of a motion for appointment of counsel for a plaintiff in a civil action for the recovery of damages is appropriate where the likelihood of success in such action is highly dubious, Miller v. Miller (2 Cir.) 296 F.2d 283 (C.D. 370 U.S. 963, 82 S.Ct. 1591, 8 L.Ed.2d 830); Miller v. Pleasure (2 Cir.) 296 F.2d 283, Miller v. Director etc. (2 Cir.) 243 F.2d 527, affirming 146 F.Supp. 674, and denying motion for assignment of counsel in the appellate proceedings.

Let it be remembered, too, that, in relation to the court's duty or authority, as the case may be, Title 28 U.S.C. section 1915(d) which the plaintiff presently invokes, is demonstrably distinguishable, not only in mere verbal phrasing, but especially in substance, from Rule 44, Federal Rules of Criminal Procedure. Rule 44 of the Federal Criminal Rules (emphasizing the word "shall") mandatorily requires the court in a criminal case to *assign* counsel to represent a defendant appearing without counsel unless the defendant so circumstanced elects to proceed without counsel or is able to obtain counsel. Title 28 U.S.C. section 1915(d), however, *permissively allows* the court (using the significant word "may") in a civil action, to *request* an attorney to represent a plaintiff granted leave to proceed in *forma pauperis* in a civil action, who is unable to employ counsel. In recognition of the distinction here identified, the Court of Appeals, Sixth Circuit, in Reid v. Charney (6 Cir.) 235 F.2d 47, said:

> "In contrast to a criminal proceeding, in which the court has a duty to '*assign*' counsel to represent a defendant in accordance with his Constitutional right, Rule 44, Federal Rules of Criminal Procedure, 18 U.S.C.A., the court in a civil case has the statutory power only to '*request an attorney to represent*' a person unable to employ counsel. Title 28 U.S.C.A. § 1915(d)." (Emphasis in cited opinion)

Interestingly, it may be added, that language was used in a context which prompted the writer of the opinion to add the following significant sentence: "While the refusal of local counsel to serve was regrettable, the court could hardly do more than was done under the circumstances." Reid v. Charney, supra, was cited approvingly and followed in Moss v. Thomas (6 Cir.) 299 F.2d 729 and Jefferson v. Heinze (D.C.Cal.) 201 F.Supp. 606, 607, supra. But the sentence last quoted serves in a reported opinion to emphasize the power of the attorney, by the court *requested* to provide professional assistance to a plaintiff in a civil suit, simply through his *refusal* of that request, for whatever reason, or for no reason, to frustrate the court's attempt to provide such plaintiff with counsel. To the credit of the legal profession, it may be declared that such a *refusal* will rarely occur. Neverthe-

less, it is neither impossible nor unprecedented, supra.

■ Confronted with plaintiff's Motion for Appointment of Attorneys to represent plaintiff and the "Affidavit" supportive of, and incorporated into, such motion, the court considers that, while the pleading is not entitled, its language is sufficient for it to be regarded, as a "motion for leave to proceed in *forma pauperis.*" It clearly asks for an order to that end, though its title is silent upon the subject. But the court is also satisfied that the affidavit, however liberally construed, is inadequate in is averments to support a motion for leave to proceed in *forma pauperis.* As has already been recalled, Title 28 U.S.C.A. section 1915(a) requires that a person seeking leave to proceed in *forma pauperis* make, "affidavit that he is unable to pay such costs or give security therefor." The plaintiff's affidavit in each case is completely silent on the question of his *inability to give security* for such costs. It is actually silent, too, on the question of his *inability to pay for such costs.* His sole reference to his financial posture is a declaration that "because of poverty" (he) "can not secure the services of an attorney from outside the state of Nebraska to represent him in the cases at bar." It is to be noted that he does not swear that he is or was unable through poverty or otherwise, to pay the fees of an attorney or attorneys of the bar of Nebraska. He does assert that some members of the Bar of Ne-

braska, who are also by rule of the Supreme Court of Nebraska, members of the integrated Nebraska State Bar Association,[20] have declined to undertake proffered employment to represent him professionally in his litigation in this court, and, as the ground of such declination, have professed their apprehension of "retaliation of the Supreme Court of Nebraska and the Nebraska State Bar Association." Somewhat singularly, that statement is immediately followed in his affidavit by this sentence: 'This plaintiff has further "attempted to secure the services of attorneys from other states to represent him in these actions in the United States District Court for the District of Nebraska, and the said attorneys giving the same reasons as the Nebraska attorneys.'" It is with that background that he makes, as his only reference to "poverty," the statement above quoted, that: "because of poverty" (he) "can not secure the services of an attorney from outside the state of Nebraska to represent him in the cases at bar." The persuasiveness of that statement is measurably minimized by his earlier declaration of the refusal of some unnamed attorneys from beyond Nebraska to accept his representation on other grounds, supra.

Again, the plaintiff actually makes no financial showing whatsoever from which his inability to pay or give security for costs herein may reasonably be considered to arise or exist. The court, upon the entire showing made by plaintiff, is of the opinion that he does not

---

20. At this point, the court makes recognition of the fact that all active—that is to say all practicing—attorneys at law of the state of Nebraska are, and since September 30, 1937 have been, members of the Nebraska State Bar Association, which on that date was erected as an integrated entity, under and pursuant to "RULES. CREATING, CONTROLLING AND REGULATING NEBRASKA STATE BAR ASSOCIATION," then and there adopted and promulgated by the Supreme Court of Nebraska (see In re Integration of Nebraska State Bar Association, 133 Neb. 283, 275 N.W. 265, 269, 114 A.L.R. 151) (and see Niklaus v.

Simmons (D.C.Neb.) 196 F.Supp. 691 for an extended discussion of such integration.)

It is also recognized that, by virtue of Rule 5, of the Rules of Practice of the United States District Court for the District of Nebraska, all of the active members of the Bar of this court are recruited from the members of the Bar of Nebraska, therefore, of the integrated Nebraska State Bar Association.

The observations of the preceding paragraphs of this footnote are believed to be accepted as correct by the parties litigant herein. In any event, they are demonstrably true.

make an adequate or credible showing by an affidavit of poverty.

His demand for the judicial *appointment,* not restricted to the statutorily limited *request,* supra, of counsel prompts this reflection. The magnitude of his monetary demands in his three separate suits has already been mentioned. Surely, if any suit for such a sum, or for such sums, of money be possessed of merit, it need not fail or languish for want of counsel. The facets of this thought need not be amplified or developed in the present setting.

Reference is now made, without repetitive analysis, to the records of this court, and of the Court of Appeals, Eighth Circuit, and of the Supreme Court of the United States, in these cases, and with special emphasis upon the opinions, previously cited herein, of this court and of the Court of Appeals, Eighth Circuit, in each of the three cases. For the reasons set out in those opinions, it is by this court considered and concluded that each of the plaintiff's several complaints reflects a claim that is, and in its inception was, and continuously since its institution has been, devoid of merit, and vulnerable to a motion or to motions to dismiss for failure to state a claim or claims on which relief can be granted, and was and is made against defendants, of whom most are by law immune to litigation based on the demands made in such complaints. Those complaints do not disclose or allege substantial claims worthy of consideration in litigation. Actually and essentially, they are frivolous demands, however earnestly the plaintiff may subjectively adhere to them, and present them.

The court is prompted by its familiarity with the files in these three cases, as well as with numerous other items of litigation upon its docket which, during recent years, Mr. Rhodes has instituted and prosecuted, and in considerable part is still prosecuting, to this observation. One naturally, though probably not invariably or inevitably, thinks of the grant of leave to proceed in *forma*

*pauperis,* or of the provision, by judicial appointment or "invitation," of counsel for a party to litigation, as a benevolent device wherewith to minimize the burden of litigation thrust upon a reluctant participant in it. But that is not the pattern which emerges from the instant request. What is here sought possesses the connotations of the arming of an aggressor. That supposition is not eliminated by the applicant's subjective certainty of the worthiness of his cause. A litigant rarely appraises his position in controversy by objective standards. It appears all too certain that the court is being implored to provide not a shield but a sword. If not utterly unwilling, the court is intelligibly reluctant, in the ostensible guise of benevolence, thus to "endow" a project for the prosecution of aggressive litigation, especially of the character disclosed by the present record.

■ And the plaintiff's present request for leave to proceed in *forma pauperis,* and for the court's "appointment" of counsel in his behalf, is obviously made with unpardonable tardiness. Each case had been finally determined adversely to the plaintiff before the request was made. Even his post-judgment Motion to Vacate was then in the course of submission upon dispositive motions. The court may not becomingly excuse the course which the present record discloses, in respect of the time of tender of the motion for leave to proceed in *forma pauperis,* and for the "appointment" of counsel, much less promote or reward it.

■ Finally, that to which the court is invited in the motion for leave to proceed in *forma pauperis* and for "appointment" of counsel is, essentially, quite intolerable. The court is asked to *appoint* counsel in the face of the statutory limitation of its authority to the making of a *request,* a distinction which is substantial, not merely verbal. More than that, the motion imposes a veto by its maker upon the court's resort in quest of counsel to members of the bar of this court, and insists that "the attorneys appointed * * * be not members

of the * * * Nebraska State Bar Association." As thus made, the motion of plaintiff is manifestly not entitled to allowance. This court would not, in the present setting, "appoint" an attorney or attorneys from its own Bar, therefore too, from the Bar of Nebraska, to represent the plaintiff in the narrow remaining phase of this litigation, supra. Of course, it is not, by the plaintiff, requested to make such an "appointment," which is actually and explicitly rejected in advance in and by plaintiff's motion. And this court will certainly not go, "hat in hand" to another state or to other states and "request" a member or members of the Bar of such other state or states to come into this court and undertake the representation of the plaintiff in these suits, or in one or more of them.

The plaintiff's motion for leave to proceed herein in *forma pauperis* and for the appointment of an attorney or attorneys to represent the plaintiff herein is, therefore, being denied and overruled.

The rulings already announced herein adequately and completely respond in each of the three cases to the plaintiff's (a) motion to vacate judgment, (b) supplement to motion to vacate judgment, and (c) second supplement to motion to vacate judgment, and (d) in addition thereto, to his motion for leave to proceed herein in *forma pauperis* and for appointment of attorneys to represent plaintiff. Ordinarily, their announcement would be the court's final comment touching the present position of the litigation.

But an unusual record in each of the cases leads this court to the conclusion that this memorandum should be expanded to include, and to make and announce, the disposition of several filings which have been made in all of the cases since the completion of the oral argument of January 31, 1966, already identified.

After that argument, and at irregular intervals commencing on June 13, 1966, the plaintiff, without obtaining or seeking leave therefor, has served and, under dates immediately hereinafter set out, filed, in each of the cases pleadings, of which the following is a summarizing reflection:

| Date | Plaintiff's Description of Pleading | Filing No. in case 01322 | Filing No. in case 01682 | Filing No. in case 01784 |
|---|---|---|---|---|
| **1966** | | | | |
| July 9 | Demand for Admission of Facts | 97 | 48 | 28 |
| July 19 | First Demand for Written Interrogatories and Written Interrogatories, and Second Demand for Admission of Facts | 105 | 56 | 35 |
| August 9 | Second Demand for Written Interrogatories and Written Interrogatories, and Third Demand for Admission of Facts | 109 | 60 | 39 |
| August 8 | Third Demand for Written Interrogatories and Written Interrogatories, and Fourth Demand for Admission of Facts | 108 | 59 | 38 |

It is reasonably inferable that the filings of August 8, 1966 and August 9, 1966, were made in a sequence inverse to their service by the plaintiff on the defendants; but that probability presents no real confusion.

 In filings, estimated by the court to be eight in number, made by the defendants in each case, the several defendants have served and filed objections to those successive post submission "Demands" and "Interrogatories" of plaintiff which, in effect, seek the quashing or suppression of the Demands and Interrogatories. It is by the court considered to be unnecessary either to repeat in detail, or exhaustively to analyze, the several objections tendered in those filings of the defendants. A reasonable effort to summarize them appears to have been made in "Objections" filed by all of the defendants on August 18, 1966, and aimed primarily at plaintiff's then most recent demands, supra. Therein, the defendants contended that the "Demands" and "Interrogatories"

> "(a) are not in proper form, (b) are repetitious of pleadings previously served on defendants, (c) are submitted to harass plaintiffs,[21] (d) would require substantial and undue difficulty and expense to answer, (e) call for irrelevant information, (f) call for conclusions of law, and (g) contain scandalous, vituperative, scurrilous and argumentative matter."

The court considers that it is unnecessary in this context either to affirm or to reject specification (c), "submission to harass defendants," or that part of specification (g) which asserts the presence of scandalous, vituperative or scurrilous material in the Demands or Interrogatories. But, for the rest, the defects thus by the defendants alleged against the Demands and Interrogatories are actually present. Those Demands and Admissions are not in proper form, but rather confuse the mission and procedural prescription of interrogatories on the one hand, and requests for admission,

on the other. The plaintiff's requests are also factually unobjective and argumentative in their tenor, and largely seek not facts but the acknowledgment of Mr. Rhodes' interpretation of what he contends to be the legal significance of facts, themselves in dispute. They abound, too, in repetition. The later demands and interrogatories indefensibly repeat their respective predecessors. And each such filing—even the first one—repeats itself. The answers sought would certainly require large expense for the arrival at knowledge on which they would be based. They call very largely for conclusions of law, as has already been intimated. And they abound in argumentative matter, an inescapable conclusion. That, virtually in their entirety, they call for irrelevant information is unquestionably true. In the respect last above mentioned, whether by indirection or by design, the "Demands" and "Interrogatories" are not oriented to the plaintiff's quest for the vacation of the several judgments made and given in these three cases, which is what, and what alone, is now before this court. They are consciously and unmistakably aimed at, and designed to assemble evidence for, the trial on the merits of each of the three cases as they were severally originally filed. They have not at all to do with the pending motions of the defendants—the items now actually before this court—directed against the plaintiff's several motions to vacate judgments, and their several supplementations. And, as the court has endeavored to make clear, it is inflexibly persuaded that those immediately pending motions of the defendants are well taken and must be—as they are being— granted and sustained, with the consequence of the denial and dismissal of the plaintiff's separate motions to vacate judgments, and of their respective supplementations. The court now convened and acting, and both of its judges, are satisfied that, in their entirety, the plaintiff's Demands and Interrogatories are submitted at a point in this litiga-

---

21. By which the pleader must inevitably mean, "defendants."

tion where they have no proper place. However, it is in order also to make this further statement. Each of the judges has examined in detail all of the several "Demands" and "Interrogatories". And they consider that, in the manner of their verbal, presentation, with the exception of a very few merely formal, and preliminary, questions or requests, they are so argumentatively and controversially formulated as to require their individual quashing and suppression, and the absolution of the defendants, and each of them, from any and all obligation to answer them, or any of them. Though tardily, the law's objective, *"ut litium sit finis,"* should be administered. Accordingly, the plaintiff's "Demands" and "Interrogatories" above identified are being quashed and suppressed severally and entirely in these three cases, and the defendants, and each of them, are being freed of any obligation to respond to them, or any of them, in these cases. At this juncture, it appears to be in order, although probably unnecessary, precautionarily to offer this thought. The ruling disclosed in this paragraph is expressly limited to cases numbered 01322, 01682 and 01784. To the extent that Mr. Rhodes has tendered the same or like "Demands" and "Interrogatories" in any other case or cases pending in this court ruling will be made concerning them in each such case or cases, with due regard to the context in which they are there tendered.

There is a further, and rather bizarre aspect of the plaintiff's "Demands" and "Interrogatories" which, while it has not controlled, lends support to, the ruling already announced. The plaintiff appears, beyond question, to demand that the judges of this court, (the two judges in active status and the senior judge assigned to this district, thus including both of the judges now acting herein) make response in writing to his "Demands" and "Interrogatories," after the manner of opposing parties. Such a demand is explicit in his pleading filed in each of these cases on August 9, 1966, supra. As filed in each case, that plead-ing opens with the following paragraph, which governs and embraces all of its ensuing fifteen paragraphs:

"Comes now Paul E. Rhodes pursuant to Rules 33 and 36 of the Federal Rules of Civil Procedure, propounds the interrogatory and demands for admission of fact as are hereinafter set forth upon the opposing parties namely: Richard E. Robinson, Robert Van Pelt, and John W. Delehant and each of the same, you and each of you are required to answer said interrogatories and demands for admission within fifteen days from the date of the service of this document and if you do not answer the demands for admission in writing the upon you (sic) as required by law and the Federal Rules of Civil Procedure, same will be taken as true."

It is true that on oral argument Mr. Rhodes disclaimed an intention to demand responses by the judges. But the language just quoted is too plain for construction. And the pleading in which it appears seems to demand nothing from any defendant or defendants to these suits, although the only service of it was made upon counsel for the defendants, not upon any of the judges. Interestingly, in the pleading filed by the plaintiff on August 8, 1966, he presented expressly to the defendants in these cases the same demands and interrogatories, which he addressed to the judges in his pleading filed August 9, 1966. So the demand upon and interrogatories to the judges was filed after the filing of the like demand upon and interrogatories to the defendants. It need hardly be added that the judges have made no response.

Separate judgments are being made and given, and are being filed concurrently herewith, in each of cases numbered 01322, 01682 and 01784, wherein the rulings herein announced, and each of them, are being made. This memorandum in identical language is being filed as an original announcement of ruling in each of those cases.

The clerk will transmit forthwith one copy of this Memorandum, and one copy of the Judgment so made, entered and filed in each of the three cases numbered 01322, 01682 and 01784, to each of the following several persons:

1. Paul Rhodes, Postoffice Box 41, Elwood, Kansas;

2. Paul Rhodes, Bridgeport, Nebraska;

3. Paul Rhodes, Howe, Nebraska;

4. Clarence A. H. Meyer, Esq., Attorney General of Nebraska, State Capitol Building, Lincoln, Nebraska;

5. Robert A. Nelson, Esq., Special Assistant Attorney General of Nebraska, Postoffice Box 2028, Lincoln, Nebraska;

6. John R. Baylor, Esq., H. B. Evnen, Esq., and J. Arthur Curtiss, Esq., care of Baylor, Evnen, Baylor & Urbom, Sharp Building, Lincoln, Nebraska (one copy of each item for all);

7. James L. Macken, Esq., Bridgeport, Nebraska; and,

8. Donald L. Knowles, Esq., and James M. Murphy, Esq., Douglas County Court House, Omaha, Nebraska (one copy of each item for both).